## TILLAR *v.* HENRY.

Opinion delivered May 27, 1905.

CONSTRUCTIVE TRUST—PAROL EVIDENCE.—While constructive trusts may be proved by parol, such evidence is received with great caution, and must be full, clear and convincing.

Appeal from Drew Chancery Court.

MARCUS L. HAWKINS, Judge.

Reversed in part.

*S. M. Taylor* and *W. S. McCain,* for appellant.

There must be some evidence of fraud. 47 Ark. 93. The claim of appellees is a stale one. 34 Ark. 467; Bisph. Eq. § 148. The testimony as to fraud is vague and indefinite. 15 Am. & Eng. Enc. Law, 1188. The trust, if any, in this case is an implied one. 1 Pom. Eq. § 152, 155; 4 Am. Dec. Eq. 191; 40 Ark. 68; 42 Ark. 511. A parol agreement that another shall be interested in the purchase of lands, without an advance of money, falls within the statute of frauds, and cannot create a resulting trust. 138 U. S. 587; 42 Am. Dec. 521; 50 Ark. 71. That parol evidence may have the effect of converting a deed into a trust, it must be clear and convincing. 48 Ark. 174; Perry, Trusts, § 137; 2 Warvelle, Ven. § 584; 11 Allen, 15; 48 Ark. 176; 45 Ark. 472; 1 Am. Dec. Eq. 522; 57 Ark. 637. Oral proof cannot be heard to ingraft an express trust upon a deed absolute in terms. 72 Ala. 110; 117 Ill. 98; 4 W. & S. (Pa.) 149; 8 Casey, 371; 41 Ark. 400. A resulting trust comes about only when the deed is made without consideration. Perry, Trusts, 124. An express trust cannot rest in parol. Sand & H. Dig. § 3480; 67 Ark. 530. Appellees' claim is barred by statute of limitations. 67 Ark. 613; 46 Ark. 25; 54 Ark. 627; 9 Wheat. 489; Jones, Mortg. § 1156; Boone, Mortg. § 162; 2 Story, Eq. § 1028*a*; 3 Johns, 129; 10 Wheat, 152; 23 Hun, 190; 16 Ark. 124; Wood, Lim. § § 200, 215; Story, Eq. § 1520*a*; 70 Ark. 145; 50 Ark. 152; 120 U. S.

386; 41 Ark. 301; Busw. Lim. § 345; 2 Perry, Trusts, § 865; 157 Ill. 254; 43 W. Va. 152.

*Bridges & Wooldridge, Wells, Williamson & Cotham,* for appellees.

Appellees are entitled to relief if the proof establishes a trust, either express or implied. Kirby's Dig. § 3666; Eaton, Eq. 362; 1 Perry, Tr. § 79. A clear case of constructive trust is made out by the proof. Eaton, Eq. 412; 1 Ark. 391, 425; 19 Ark. 39; 20 Ark. 381; 41 Ark. 264; 97 U. S. 624; 34 N. Y. 307; 157 N. Y. 281; 96 N. Y. 426. If the fraud is unknown to the injured party, the lapse of time will not constitute laches. Perry, Tr. § § 228-230; 46 Ark. 35; Wood, Lim. § 275; Angell, Lim. 388.

*W. S. McCain* and *S. M. Taylor,* for appellant in reply.

Where the trust is denied, the beneficiary must proceed within a reasonable time. 158 U. S. 419; 1 C. C. A. 271; 54 Ark. 81; 143 U. S. 553. The appellees did not come into court with clean hands. 10 Ark. 53; 22 N. J. Eq. 102; 1 Pom. Eq. § 401; 1 Wall. 518.

HILL, C. J. T. R. Henry and J. T. Duncan were partners in business under the firm name of Duncan & Henry. Henry died, leaving Mrs. Sue. M. Henry, his widow, and Claude Henry, their son. Duncan is a brother of Mrs. Henry, and after her husband's death looked after her affairs. T. F. Tillar was a neighbor and friend of the Henrys, a business man and a planter. The firm of Duncan & Henry owed considerable money, but Henry owned considerable property, both real and personal, but the estate had no cash to meet present demands. The real estate consisted of three places, the Henry place, or home place, consisting of over 500 acres, of which nearly 300 were in cultivation; the Guinn place, of about 700 acres, of which about 100 acres were in cultivation, and the Roane place, 160 acres, of which 40 acres were in cultivation. Mrs. Henry was administratrix of her husband's estate. The Guinn and Roane places were under mortgages, the mortgages were foreclosed, and the properties

sold at commissioner's sale January 28, 1893, and bought by Tillar for about $1,450 for the two places. Deeds were duly executed to him. On April 1, 1893, the Henry or home place was sold at administratrix sale, subject to the widow's dower.

Duncan requested Tillar to buy this home property for Mrs. Henry's benefit. He went to the county seat to attend the sale, and found the representatives of the creditors there expecting to buy the place to protect their debts. They regarded the estate as solvent, and expected to work their debts out through regular course of administration. Tillar entered into negotiations with them, and effected an agreement by which he purchased all the claims at par, the creditors giving him one and two years' time on the payment. When this agreement was reached, the property was then sold, and Tillar purchased, and at once announced he was purchasing for Mrs. Henry. There is no dispute as to his purchase of the place for her benefit, he to retain possession and use it until the place repaid his expenditures, and then to turn it over to her and her son. About the last of 1901 or early in 1902 Tillar brought suit against Duncan on a judgment against Duncan & Henry which he had purchased. The suit was brought just before the judgment would be barred by limitations. Duncan filed a cross-complaint against Tillar, alleging that Tillar bought the three places pursuant to an agreement with him to the effect that he would purchase these places in his own name, and hold them in trust to pay the debts of Duncan & Henry, the remainder over to Mrs. Henry and her son, and that the rents and profits and sales had been sufficient to pay off all the indebtedness, including the judgment sued on. Mrs. Henry on the same day this cross-complaint was verified filed, in behalf of herself and son, a suit in equity to the same effect. The cases were consolidated in chancery, and tried together, with the result that Tillar was held a trustee for all three places, and an account stated accordingly. To reverse that decree he has appealed, but does not appeal from the decree as to the Henry place nor the accounting in regard thereto, averring that he always held that subject only to reimbursement, which is accorded him in the decree. Therefore the only questions presented is as to whether he should be held as trustee for the Guinn and Roane places.

The substance of the evidence is as follows: Duncan says that on the 27th of January, 1893, the day before the chancery sales of these places, at the village of Tillar, he made an agreement with Tillar by which Tillar was to buy in the places, pay the probated claims, hold the real estate as security until he got his money back; that there was no agreement as to interest, but he expected Tillar to get ten per cent. Duncan says that prior to this he had promise from a gentleman of means in Monticello to let him have $4,000 to pay off the claims, but Mrs. Henry preferred dealing with Tillar; and when he made this arrangement with Tillar, he dropped the other matter. Tillar did not attend the sale, but Duncan says he carried a note from him to Judge W. T. Wells, who was attending to Mrs. Henry's administration matters and also foreclosing these mortgages, to buy in the land in his (Tillar's) name for Mrs. Sue Henry, but not to pay over $1,500. The lands were bid in at a price slightly under $1,500 by Judge Wells, and the purchase money paid by Tillar, and the deeds made to him. Judge Wells testifies that he does not remember whether or not Tillar was present at the sale; has an impression that Duncan was there, and Tillar was not. He is not certain that he bid in the lands for Tillar; thinks it likely he did so, and his recollection is that he received a note or message from Tillar; but if a note he cannot produce it, for it is either lost or destroyed. His impression was that in buying the Henry lands there was some understanding between Tillar and Mrs. Henry that Tillar was buying to assist her. Tillar postively denies any agreement with Duncan about the purchase of these places in January, and says when he bought at these sales he had no thought of afterward buying at the probate sale the Henry place. That he bought the Henry place pursuant to request of Duncan, and told Mrs. Henry of the arrangement immediately afterward, and was always ready to fulfill it. His version of the purchase at the January sales is that he wrote a letter to Judge Wells by mail prior to the sales to buy the lands for him, but not to pay exceeding $1,500 for both places. He denies positively any agreement with Duncan or Mrs. Henry about them. He details his agreement with the creditors and the purchase on April 1st of the home place; but as there is no dispute over that matter, it is not necessary to

29

further refer to it, other than to say that his statement in this regard comports with the other witnesses.

Mrs. Henry's testimony throws but little, if any, light on the question. Her whole testimony leaves doubt whether she regarded Tillar as trustee for all the lands or the home place only. As her information was derived from Duncan, stronger corroboration of his testimony would be expected than is found in her evidence. She asked him for a statement of her account in 1898, and he furnished an itemized account of "the Henry place" brought to April 1, 1898. Appellee claims that two items in it acknowledged credits arising from the Guinn and Roane places. These grew out of rents collected from two negroes to whom Henry had sold small tracts in his lifetime, one had a clearing right on the line between the home place and the other, and of the other it is doubtful which tract it came from. Tillar testified that he thought these tracts were on the Henry place, and they had been so treated, and he continued to do so; and if they were not, he simply made a mistake against himself in charging himself with rent of them. He received rents from other tenants on both places for five years, and received a large sum from the sales of a cypress brake, and received money and notes from other sales. If he intended to recognize a trust against these two places, it is inconceivable that he should do so by charging himself with the rent from these two negroes, and omit to charge all other receipts from the places. The statement, including these errors, if errors they be, is strongly corroborative of Tillar's evidence. In the nine years of the alleged trust it was the only account called for, and only one conversation between him and Mrs. Henry was shown during that time (except his promise at the beginning of his trust to do the best he could for her), and that left doubt, as indicated above, whether she regarded him as trustee for more than the home place. There is some corroborating evidence and circumstances for each side, but in the main the case rests upon the testimony of Duncan and Tillar. Each intelligent, interested and with equal knowledge of the facts, yet their testimony is in irreconcilable conflict; one establishes the trust, the other defeats it. The appellees rely, in the first instance, on an express trust, resting on the letter

Duncan says Tillar wrote Judge Wells, telling him to buy the places in his (Tillar's) name for Mrs. Sue Henry. This letter and its contents depends entirely upon the testimony of Duncan. Judge Wells does not even remember whether he received any letter at all, and, of course, cannot and does not testify to its contents. Tillar positively denies writing such letter, and denies sending any letter by Duncan at all, and says that he wrote an entirely different letter from the one quoted by Duncan, and sent it by mail to Judge Wells some days prior to the sale. To say nothing of the unreliability of the memory of the contents of a letter twelve years ago, the appellees wholly fail on the burden of proof on this issue. The trust chiefly relied upon by appellee is a constructive trust.

Counsel for appellant lays down this application of the principles of constructive trusts to this case:

"Now, if Tillar, on the day before the chancery sales, agreed with Duncan to go and buy the place for Mrs. Henry, this of itself would not make Tillar's purchase fraudulent, because fraud consists in acts and results, and not in mere words. But if Tillar made with Duncan such an agreement, oral or otherwise, and thereby Duncan and Mrs. Henry were induced to relax their efforts to raise money and pay off the decrees, or if this agreement was made known to other bidders who would have paid more for the property, and they were, by reason of this agreement, induced to refrain from 'bidding against the widow,' then it would have been a fraud for Tillar afterward to claim the land for himself."

Counsel for appellees insist that this application of the law concedes the case to them. Thus the counsel met on common ground in applying the doctrine of constructive trusts to the case at bar. Accepting this application as sound, it is left to determine the sufficiency of the evidence.

Constructive trusts may be proved by parol, but parol evidence is received with great caution, and the courts uniformly require the evidence to establish such trusts to be clear and satisfactory. Sometimes it is expressed that the "evidence offered for this purpose must be of so positive a character as to leave

no doubt of the fact," and sometimes it is expressed as requiring the evidence to be "full, clear and convincing" and sometimes expressed as requiring it to be "clearly established." *Crittenden* v. *Woodruff,* 11 Ark. 82; *Trapnall* v. *Brown,* 19 Ark. 39; *Johnson* v. *Richardson,* 44 Ark. 365; *Richardson* v. *Taylor,* 45 Ark. 472; *Robinson* v. *Robinson,* 45 Ark. 481; *Crow* v. *Watkins,* 48 Ark. 169; *Camden* v. *Bennett,* 64 Ark. 115; 1 Perry on Trusts, § 137.

The statement of the rule makes it manifest that the evidence in this case does not measure up to the standard required to establish a constructive trust by parol.

Titles to real estate cannot be overturned by a bare preponderance of oral testimony seeking to establish a trust in opposition to written instruments. The conservatism of the courts has prevented the tenure of realty being based on such shifting sands.

The statute of frauds has limited trusts capable of being proved by parol, and the courts uniformly tell those who seek to establish those trusts permitted to be established in this way: "Your evidence must be full, clear and convincing." The appellees failed to establish the trusts as to the Guinn and Roane places according to the requirements of equity jurisprudence.

The decree is affirmed as to the Henry place, but is reversed as to the Roane and Guinn places, and the cause is remanded with directions to enter a decree in accordance herewith.