## DAVIS *v*. SPARKS.

### Opinion delivered July 1, 1918.

1. APPEAL AND ERROR—LIMITATION ON APPEALS.—Where, under Acts 1913, p. 318, a decree in chancery was rendered in vacation, an appeal therefrom prosecuted within six months thereafter, though not within six months from the last previous term of court, is within time.

2. WILLS—DEVISE IN FEE SIMPLE—EFFECT OF REMAINDER OVER.— Where a will devised land in fee simple, a contemporaneous written contract between the devisor and devisee whereby it was recited that the property was devised in fee simple, and that the devisee should have the right to use and control the property and sell it if be so desired, but that in the event he did not dispose of it, or should exchange or sell it, he should devise the property itself, or the proceeds on hand to the devisor's mother, was void as an attempt to provide for an estate by way of remainder over after a devise in fee simple.

Appeal from Arkansas Chancery Court; *Jno. M. Elliott,* Chancellor; reversed.

*John M. Henderson* and *Eugene Lankford,* for appellants.

1. The appeal was taken within the six months. The decree was rendered November 12, 1917, and the transcript filed April 5, 1918.

2. All the testimony as to the alleged lost contract was incompetent. Besides it was contradictory of the will. The case in 102 Ark. 30 is not in point. Parol evidence was not admissible to establish a trust or vary the terms of a written will. The alleged contract is vague and indefinite if established. Alexander on Wills, 158-168; K. & C. Dig., § 3997; 57 Ark. 636; 34 Atl. 909; 19 Col. 168; 156 Ind. 60; 32 *Id.* 104; 75 N. J. Eq. 305; 139 Ia. 159; 141 Ia. 144; 244 Ill. 297; 99 Ark. 218; 103 *Id.* 273; 101 *Id.* 541; 104 *Id.* 37; 110 *Id.* 393; 113 *Id.* 36; 116 *Id.* 370.

*C. E. Condray* and *John W. Moncrief,* for appellees.

1. The transcript was not lodged within the six months allowed by law and the appeal should be dismissed. The decree was rendered September 24, 1917.

2. The contract did not conflict with the will. Parol evidence was admissible to prove it. 45 Ark. 81; 96 *Id.* 171. The admissions of an ancestor may be proved against the heirs to prove the contents of a lost instrument. 1 Elliott, Ev., § 267; 101 Ark. 409; 97 *Id.* 568; 96 *Id.* 190; 51 *Id.* 533; 1 Elliott, Ev., § 533, 625; 66 Am. St. 224-9; *Ib.* 220-2. The lost instrument was duly proven by competent evidence.

3. Appellees are parties in interest and have the right to defend their possession under the contract. 110 Am. St. 911; 120 *Id.* 1038; 102 *Id.* 223; *Ib.* 799-804; 16 N. E. 590; 95 Ark. 438; 85 *Id.* 59; 31 *Id.* 155; 102 *Id.* 41. See also 30 Cyc. 34; 89 S. E. 749; 15 L. R. A. 447, etc.; 115 Ark. 154.

4. The testimony shows a trust. Cases *supra.* The statute of frauds does not apply and it was not pleaded.

The contract was in writing.   96 Ark. 184; 105 *Id.* 638; 96 *Id.* 184.   See also 116 *Id.* 370.

5.   The findings of the chancellor are not against the clear preponderance of the evidence.   101 Ark. 368; 91 *Id.* 69.

6.   See 36 Cyc. 736, and note and cases cited as to validity of the contract proven.   13 N. E. 753.

McCULLOCH, C. J.   Appellees contend that the appeal in this case was not taken within six months after the rendition of the decree, and that the appeal should, for that reason, be dismissed.

In the transcript before us the decree follows the opening order of the court on the first day of the term, September 24, 1917, which would indicate on its face that the decree was rendered on that day, but appellees have supplied additional parts of the record which show that the court adjourned over to the next day and then adjourned for the term.   At the foot of the decree in the transcript it is dated November 12, 1917, and the decree itself recites that there was an agreement of the parties that the chancellor should hear the cause and render decree at the time it was then heard.   Considering the records before us altogether, we think that it shows that the decree was rendered on November 12, 1917, in vacation and that this was done by express consent of the parties. The statute provides that a chancellor may, by consent of all parties, try cases and "deliver opinions and make and sign decrees in vacation" with the same effect "as if made, entered and recorded in term time, and appeals may be had therefrom as in other cases." Acts 1913, p. 318.   The appeal was granted by the clerk of this court on April 5, 1918, which was within six months from the date of rendition of the decree, and was, therefore, within the time specified by statute.

The real estate in controversy, four lots in the incorporated town of DeWitt, Arkansas, was originally owned by Mrs. Lena Davis, now deceased, who was the daughter of Mrs. Mattie Sparks, one of the appellees, and by her last will and testament duly executed and published, and

which was duly admitted to probate after her death, she devised the said property in fee simple to her husband, Lude Davis. The will of Mrs. Davis was executed on January 29, 1914, and she died the same year, the will being admitted to probate shortly after her death. Lude Davis died intestate in the year 1915, leaving appellants his heirs at law, and they claim title to the property in controversy through the devise by Mrs. Davis to her husband, Lude Davis, and by inheritance as the heirs of the latter. Mrs. Sparks was in possession of the property, and appellants instituted this action at law against her to recover possession. The cause was transferred to the chancery court and proceeded there to final decree in favor of Mrs. Sparks.

Mrs. Sparks claims the property under an alleged contract between Mrs. Davis, the testatrix, and her husband whereby the latter agreed, in consideration of the execution of the will by Mrs. Davis, to devise the property to Mrs. Sparks, the mother of Mrs. Davis, in the event that he should not dispose of it during his lifetime, or to devise to her the proceeds of sale of the property or any other property received in exchange therefor. It is alleged that the contract was in writing, but has been lost, and evidence was adduced at the trial to establish the execution of the contract and the contents thereof. The chancellor found that a contract of that nature had been executed contemporaneously with the execution of the last will and testament of Mrs. Davis, and decreed in favor of Mrs. Sparks in accordance with the terms of the contract.

After careful consideration of the testimony in the cause we are of the opinion that the findings of facts made by the chancellor are not against the preponderance of the testimony.

The will of Mrs. Davis on its face conveyed the title in fee simple to the property in controversy to Lude Davis. It was a devise in plain terms, and there is nothing in the language of the will to create any uncertainty or ambiguity as to the real intention of the testatrix. It

was proved at the trial that a written contract was entered into between Mrs. Davis and her husband at the time of the execution of the will, reciting, in substance, that the property in controversy should be devised to Lude Davis in fee simple in order not to impair his credit before the public and that he should have the right to use and control the property and sell it if he so desired, but that in the event he did not dispose of it, or in the event he should exchange the property for other property, or sell it, he should devise the property itself or the property taken in exchange, or any part of the proceeds left on hand to Mrs. Sparks, the mother of the testatrix.

The execution of the contract was proved, but it is shown to have been lost, probably destroyed by Lude Davis after the death of his wife, but the attorney who testified in the case stated its contents and attached to his deposition a copy of the contract which he had rewritten from his recollection of what the original contained. The substance of the contract, as shown by the deposition of the attorney, was that Lude Davis should have the exclusive control of the property with the right to incumber or to sell it, but that in the event he did not otherwise dispose of it he should devise it to Mrs. Sparks, if living, or to her heirs, and that, in the event of the exchange of the property or the sale thereof, he should so devise any of the remaining proceeds.

This is not an attempt to vary the terms of the will by oral testimony but it is to establish a written contemporaneous contract between the testatrix and the devisee concerning the disposition of the property or the unused portion of the proceeds in the event of a sale or exchange thereof by the devisee. The question presented is whether or not the written contract, treating it as fully proved by the evidence, which we do, was sufficient to change or limit the estate devised under the will of Mrs. Davis. If the substance of the contract, as proved by the witnesses, had been incorporated in the will itself in connection with

·the language there used devising the property to Lude Davis, it is clear that the limitation expressed by the language of the contract would have been repugnant to the devise to Lude Davis in fee simple. and would have been void. That necessarily follows from the decision of this court in the case of *Bernstein* v. *Bramble,* 81 Ark. 480. In that case the language of the will under consideration was as follows:

"All the rest, residue and remainder of my estate, real as well as personal, and wheresoever situated, I hereby devise, give and bequeath to my beloved wife, Minna Elle, to have and to hold the same in fee simple forever. But in the case of the death of my beloved wife it is my will that all the estate then remaining and not disposed of by her by a last will or other writing shall pass to my said brother, Moritz Elle, and my sister, Henrietta Bernstein, or their heirs in equal parts."

We decided that the granting clause conveyed the title to Minna Elle in fee simple and that the succeeding clause providing for a remainder over after the death of the first taker was void. The cases on that subject were fully reviewed by Judge Battle in the opinion, and among other authorities cited was the following quotation from Page on Wills, section 684, which is peculiarly applicable to the case in hand:

"It not infrequently happens that a testator disposes of property in fee, and then attempts to provide for the disposition of the property after the death of the devisee in fee simple. A provision of this sort is to be carefully distinguished from the cases where a fee simple is cut down to a life estate by a devise over after the death of the first taker. The distinction between the two classes of cases, though not strongly marked, is well recognized by the courts. If the devise over upon the death of A is intended to pass entire property, it is evident that the testator contemplated that A should take only a life estate. without any power of disposing of his property for a longer term than his own life. But where the devise over upon the death of A shows that A was vested with a

fee simple estate, and that testator wishes him to have such an estate, but to direct the course of its descent upon his death, the limitation over after the fee is repugnant to the nature of the estate and void. * * * A condition that, if devisee does not dispose of his property in any way during his lifetime, it shall pass to certain named persons is held to be void.''

That case was followed by the later case of *CarlLee* v. *Ellsberry,* 82 Ark. 209, which involved a limitation upon the grant of title in fee simple in a deed, and the correctness of the doctrine thus announced was again expressly recognized by this court in the more recent case of *Archer* v. *Palmer,* 112 Ark. 527, which involved, principally, the question of the effect of a separate clause in a will conferring the absolute power of disposition of property which had been devised to the extent of a life estate in another clause in the same instrument.

The contemporaneous contract proved in this cause is entirely consistent with the granting clause of the will to the extent that it conveys the title to the devisee in fee simple with absolute power of disposition, and the obvious purpose of the contract was merely to control the course of descent in the event of the death of the devisee without having disposed of the property, or the proceeds in the event of a sale or exchange, if any of the proceeds remained in the hands of the original devisee. Surely the attempt to do this by a separate contemporaneous contract can not be more efficacious for the purpose of limiting the estate conveyed under the will than if it had been incorporated in the instrument which contained the grant in fee simple.

We are not unmindful of the line of cases which hold in substance that where a bequest or devise is induced by a promise made by the legatee or devisee to the testator to devote the property to a certain use for the benefit of other parties, a court of equity will declare a trust in favor of the person or persons to whom the use is to be devoted, treating an attempted violation of the promise to so devote the property to the intended use as a fraud

upon the testator. The principal case on that subject is the Amherst College case decided by the New York Court of Appeals where the authorities on the subject were fully reviewed by Judge Vann, and the following rule. established thereby:

"When it clearly appears that no trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his known wishes, the legatee, if he has made no promise, and none has been made in his behalf, takes an absolute title, and can do what he pleases with the gift. Whatever moral obligation there may be, no legal obligation rests upon him. On the other hand, if the testator is induced either to make a will or not to change one after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a .secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise. * * * The rule is founded on the principle that the legacy would not have been given or intestacy allowed to ensue unless the promise had been made; and hence the person promising is bound in equity, to keep it, as to violate it would be fraud." *Trustees of Amherst College* v. *Ritch,* 151 N. Y. 282, 37 L. R. A. 305.

Another interesting case on this subject is an opinion of the New York Court of Appeals by Judge Finch in the case of *O'Hara* v. *Dudley,* 95 N. Y. 403, 47 Am. Rep. 53, where the same rule was forcefully stated by that learned judge. It was said in each of those cases that the theory upon which a court of equity proceeded was not that the will itself was affected by the promise of the devisee but that the trust was fixed by the court on equitable principles upon the property after it came into the hands of the devisee in order to prevent a fraud being perpetrated on the testator by a violation of the promise.

That principle does not, however, apply to the present case, for no trust was created under the contract except by way of a limitation upon the fee simple title which is clearly devised under the will. In the line of

cases referred to the promise of the devisee was to devote the use of the property to the benefit of other persons who were the intended objects of the testator's bounty, and the evidence of this was admitted, not for the purpose of limiting the fee simple title, but to show that there was a trust created in favor of those for whose benefit the promise was made. In the present case the facts are different, for, accepting the contract as contended by appellees, and as clearly shown by the evidence, it was not intended that the property was to be taken under the will by Lude Davis as trustee to devote the use thereof for the benefit of some one else, but on the contrary, under the contract he was to have absolute use of the property for his own benefit, and it was only the course of descent which was to be controlled. The effect is the same whether the so-called contract be viewed as a contract executed for the benefit of third persons or whether it be treated merely as a promise to the testatrix which induced her to execute the will, for it constituted an attempt to provide for an estate by way of remainder over to a third person in spite of devise of the fee simple in the will, and as this is repugnant to the devise, it is void under the decisions of this court hereinbefore referred to, which are abundantly sustained by the great weight of authority in the interpretation of wills.

Our conclusion is, therefore, that the chancellor erred in his decree, and the same will be reversed and the cause remanded with directions to enter decree in favor of appellants for the recovery of the property in controversy.