EASON *v.* WHEELER.

Opinion delivered January 26, 1925.

1. FRAUDS, STATUTE OF—PAROL AGREEMENT TO RECONVEY.—A mere parol agreement by a purchaser of land at execution sale to reconvey the land to the execution defendants upon their reimbursing him for expenses incurred is void within the statute of frauds unless there is established an element of positive fraud whereby the title was wrongfully acquired.

2. TRUSTS—BURDEN OF PROOF.—In a suit to compel defendant to convey a lot purchased by him at execution sale under a parol agreement to reconvey to the execution defendants upon their reimbursing him for expenses incurred, the burden is on the plaintiffs to show that defendant, by fraudulent representation, deceived them and induced them to rely upon his promise to reconvey and thus to fail to make other arrangements to protect their interest in the lot.

3. EVIDENCE—HEARSAY.—In a suit to compel defendant to reconvey a lot purchased by him at execution sale, under a parol agreement to that effect, testimony that plaintiffs' agent, on the day of sale, told third parties that defendant had agreed to buy the lot for plaintiffs was incompetent to corroborate such agent's testimony that such an agreement was entered into between plaintiffs and defendant.

4. TRUSTS—EVIDENCE.—In a suit to compel defendant to convey a lot at execution sale, plaintiffs *held* not to have established a trust *ex maleficio*, in view of Crawford & Moses' Dig., §§ 4867, 4868.

Appeal from Hot Spring Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*D. D. Glover* and *D. M. Halbert,* for appellants.

The evidence in the case and the fact that appellee waited more than three years before attempting to claim any ownership in the property, is convincing that he agreed to take up the debt for appellants by buying in the property at the sale and holding same under a commissioner's deed for his security. The case falls within the provisions of the statute, C. & M. Digest, § 4868, and the principles announced in *Ammonette* v. *Black,* 73 Ark. 310. See also 109 Ark. 335; 113 Ark. 36; 92 Ark. 58; 101 Ark. 455; 151 Ark. 314. The statute of frauds was not pleaded in the answer as a defense, yet

the chancellor evidently considered it in passing upon the case. This statute is not available unless pleaded. 71 Ark. 302.

*Oscar Barnett,* for appellee.

The appellant did not allege that the contract was in writing. It devolved upon appellant to prove a valid and enforceable contract, and it was not necessary for the appellee, who denied its execution, to plead the statute of frauds. 141 Ark. 458; 19 Ark. 23; 19 Ark. 39. Remaining in possession after making the alleged contract was not alone sufficient to take the case out of the operation of the statute of frauds. 136 Ark. 447. If the alleged contract carried mutual obligations, full compliance on the part of the plaintiff must have been shown, to entitle him to a decree for specific performance on the part of the defendant. 142 Ark. 537; 118 Ark. 283.

WOOD, J. This action was instituted by the appellants against the appellee. The appellants alleged that a judgment was obtained against them in the Hot Spring Chancery Court, which was declared a lien against a certain lot in Malvern, Arkansas, and the lot was ordered sold to satisfy the judgment; that, on the day of sale, Alice Wilson, acting as agent of Green Eason, entered into a contract with W. W. Wheeler to buy in the lot for appellants, with the understanding that they were to pay Wheeler the amount bid by him with ten per cent. interest until the amount for which the lot was sold and the costs of suit were fully paid to Wheeler; that, in pursuance of such agreement, Wheeler bought the lot for the appellants, and, by agreement of appellant with him, a deed to the lot was to be made to Wheeler to secure him against loss until the amount was fully paid; that, under the contract, when the amount was fully paid, Wheeler was to deed the lot to Eason; that Wheeler paid the sum of $228.62 for the lot, and that appellants had paid appellee on this sum $98, and tendered him the balance, and asked that he perform his part of the contract to convey to Eason the lot in controversy, which appellee

refused to do. Appellants prayed that appellee be required to perform his contract.

Appellee answered denying all the allegations of the complaint, and set up, by way of cross-complaint, that appellant Eason was in the unlawful possession of the lot, and had been since the 5th day of December, 1921; that by reason of such possession, the appellee had been damaged in the sum of $112. He prayed judgment for the possession of the lot, and for damages.

The testimony for the appellants followed closely the allegations of their complaint. It was shown, in addition to these allegations, that the lot in controversy was worth about $1,000. The appellants testified to the contract as set up in their complaint, and that appellee bought the lot pursuant to this contract, and refused, after they had paid him the sum of $98, to receive the balance of the purchase money paid by him for the lot, and refused to make Eason a deed.

Alice Wilson testified that, on the day of the sale, she told certain parties that the appellant had entered into the contract with appellee to buy the lot in for Eason, and these parties corroborated her testimony in that respect. There was also testimony to the effect that the party who held the judgment against the appellants for which the lot was sold, heard his son say that the appellee purchased the lot for the appellants.

The appellee testified that he never made any agreement with the appellants to buy the lot in controversy. He bought the lot on the day it was dated for sale, and paid the money to the commissioner and received his deed; that he never agreed to buy the propery in for anybody; that the appellants had not paid him the sum of $98 on the purchase money. After appellee bought the lot, he told Eason that he would have to pay the sum of $7 per month rent for same. Appellee did not receive any rents from Eason, and had him arrested on one or two occasions for failure to pay the rent. Eason had paid only the sum of $15.80 for the whole time he had been there. Appellee, since his purchase, had continu-

ously paid the taxes on the property. The property had a value of about $500. Eason lived on the property at the time appellee bought the same in 1921, and had been living on it ever since. The appellee further testified that Alice Wilson came to see him on the day of the sale and asked him if he would buy in the property, and he told her he didn't want to fool with it in the condition it was in.

The appellants testified, in rebuttal, that they never agreed with the appellee at any time to pay rent on the place.

The trial court dismissed the appellants' complaint for want of equity, and entered a decree in favor of the appellee for the possession of the property and the sum of $129.56, balance due appellee on the rents, from which decree is this appeal.

The appellants seek to establish a trust *ex maleficio* on the part of the appellee concerning the lot in controversy, under the provisions of § 4868, Crawford & Moses' Digest, as follows:

"Where any conveyance shall be made of any lands or tenements, by which a trust or confidence may arise or result by implication of law, such trust or confidence shall not be affected by anything contained in this act."

The alleged contract between the appellants and the appellee concerning the lot in controversy was oral, and was void and unenforceable under the statute of frauds, unless the testimony was sufficient to prove an implied trust under the above statute. See § 4867, C. & M. Digest.

In *LaCotts* v. *LaCotts,* 109 Ark. 335-337, we said: "We are of the opinion that, according to the proof adduced, this case does not contain any elements of a trust *ex maleficio,* for the reason that the proof does not show that appellant procured the title by the commission of any fraud. Putting it in the strongest light, the testimony adduced by appellee only tends to establish a promise on the part of appellant to purchase the land and hold it for appellee, and a breach of that promise.

This alone is not sufficient to establish a trust *ex male-ficio. Spradling* v. *Spradling,* 101 Ark. 451." Under the facts of that case, we held that the proof was not sufficient to show any positive fraud on the part of the purchaser of the land at the sale by which he procured the title. But if the appellee, in the case at bar, procured the title in the manner alleged by the appellants, then appellee would be guilty of a positive fraud, and should be declared a trustee *ex maleficio* of the lot in controversy, under the doctrine announced by Prof. Pomeroy and quoted by Judge RIDDICK, speaking for this court, in *Ammonette* v. *Black,* 73 Ark. 310, as follows: "A second well-settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to lands by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like—and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement. There must, of course, in such cases be an element of positive fraud by means of which legal title is wrongfully acquired, for, if there was only a mere parol promise, the statute of frauds would apply." See also *Bray* v. *Timms,* 162 Ark. 247.

According to the testimony of the appellants, the appellee intentionally deceived them when they were seeking to make arrangements to have some one purchase the lot, by telling them that he would purchase the same and take title in his own name as security and allow them to repay him the purchase money. It is manifest that, if this testimony of the appellants be true, appellee, by these false and fraudulent representations, deceived

the appellants and caused them not to proceed further to make arrangements to purchase the lot, which they might have done but for such promises and representations upon the part of the appellee. But the burden was upon the appellants to prove that the appellee defrauded them in the manner alleged. The testimony of third parties, to the effect that Alice Wilson told them, on the day of the sale, that the appellee had agreed to buy the lot in controversy for the appellants, was not competent as proof in corroboration of her statements that such a contract was entered into between appellee and appellants. Such statements of Alice Wilson, in the absence of the appellee, were not binding on him, and there is no testimony in the record, except the testimony of the appellants, to the effect that the oral contract was entered into as alleged by the appellants. The testimony of the appellee, on the other hand, is as strong to the effect that he did not enter into such a contract. With this conflict of testimony, we are convinced that the appellants have not established a trust *ex maleficio* under the requirements of the rule announced in *Tiller* v. *Henry*, 75 Ark 446, as follows: "Constructive trusts may be proved by parol, but parol evidence is received with great caution, and the courts uniformly require the evidence to establish such trusts to. be clear and satisfactory. Sometimes it is expressed that the 'evidence offered for this purpose must be of so positive a character as to leave no doubt of the fact,' and sometimes it is expressed as requiring the evidence to be 'full, clear and convincing' and sometime expressed as requiring it to be clearly established.' * * * Titles to real estate cannot be overturned by a bare preponderance of oral testimony seeking to establish a trust in opposition to written instruments. The conservatism of the courts has prevented the tenure of realty being based on such shifting sands." See also *Bray* v. *Timms, supra,* and cases there cited to the same point.

The decree is therefore correct, and it is affirmed.