WOFFORD *v.* YOUNG.

Opinion delivered April 25, 1927.

1. MORTGAGES—PETITION TO SET ASIDE FORECLOSURE SALE.—Under Crawford & Moses' Dig., § 2190, the chancery court had jurisdiction to hear and determine, by consent, in vacation, a second petition to set aside a mortgage foreclosure sale, such petition having been filed at an adjourned term.

2. MORTGAGES—FORECLOSURE SALE—SETTING ASIDE.—It was error to refuse to set aside a mortgage foreclosure sale, where the evidence showed that the price paid was grossly inadequate, and that the mortgagors were lulled into security by the mortgagee's assurance that he would buy the property in and give them an opportunity to redeem by paying the debt and cost of foreclosure.

3. MORTGAGES—PURCHASER AT FORECLOSURE SALE—RENTS.—On setting aside a purchase of a half interest in land at foreclosure sale, the purchaser was entitled to a half interest in the rents from the date of the purchase to the time when the motion to set aside the sale was made.

Appeal from Crittenden Chancery Court; *J. M. Futrell,* Chancellor; reversed.

*Kenneth Rayner* and *W. H. Fisher,* for appellant.

*S. V. Neely,* for appellee.

WOOD, J.　J. L. Mercer, doing business under the name of J. L. Mercer & Company, was the beneficiary in a deed of trust in which W. S. Ayers was the trustee. The deed of trust was executed on March 28, 1923, by James L. Wofford and Frances Wofford, covering the northeast quarter of section 4, township 5 north, range 7 east, containing 160 acres, in Crittenden County, Arkansas, and was given to secure a promissory note in the sum of $676, of even date, and other advances made by Mercer to the Woffords. This action was instituted on February 3, 1925, by Mercer against the Woffords to foreclose the deed of trust in the sum of $1,204.63, the amount alleged to be due at that date under the deed. It was alleged that J. L. Wofford owned an undivided half interest in the land and that Frances Wofford owned a life estate therein.

In the affidavit for warning order against Frances Wofford it was alleged that she resided in Clay County, Kentucky, and was absent from Crittenden County, Arkansas. Wofford was served with summons, and Frank Berry was appointed attorney *ad litem* for Frances Wofford and a warning order issued for her February 3, 1925. A decree was rendered on March 16, 1925, against J. L. Wofford and against Frances Wofford, the latter by default, for $1,204.63, balance claimed to be due Mercer by the Woffords. The land as described in the deed of trust was described in the decree, and the court declared the amount of the decree "to be a lien against the interests of the defendant in the land described," and directed that the land be sold. A commissioner was appointed to make the sale upon giving notice of the time, place and terms of the sale. The notice described the land to be sold as contained in the deed of trust. The report of the sale by the commissioner showed that he sold the land condemned in the decree and that C. G. Young "became the purchaser of the whole of said premises at and for the sum of $1,314.13, he being the highest and best bidder for said lands." The lands were sold subject to a prior indebtedness in favor of the Federal Land Bank of St. Louis, Missouri. After the report of the commissioner was made to the court and confirmed, the clerk of the court interpolated in the report of the commissioner the words, "all the interest of the defendants herein," so as to make the same mean that the commissioner had sold all the interest of the defendants in the land as described in the deed of trust. Mercer had arranged with his counsel to be present at the sale, but failed to get notice and did not attend. His counsel put in a bid for him, but the property was sold for the sum of $1,314.13, and was purchased by C. G. Young, as reported by the commissioner.

There was no appeal from the decree of foreclosure. The attorneys for Wofford, on October 19, 1925, filed exceptions to the report of sale by the commissioner and a motion to set same aside on the ground that same had

sold for gross inadequacy of consideration; that the lands were worth $14,400; that they were incumbered by liens amounting in the aggregate to about $2,000, and that the rents thereon for the year 1925 amounted to $1,193, and the purchaser bid for same only $1,314.13, the net price of $21.13 an acre, when the lands were worth $90 per acre. The Woffords tendered into court the amount of the indebtedness for which the lands sold, and asked that the sale be set aside. The motion was supported by the affidavits of four landowners, residents of Crittenden County, who were familiar with the land in controversy and who placed the market value thereof at $90 per acre. Each of the affiants stated that they had no interest in the matter.

The purchaser, C. G. Young, responded to the motion to set aside the sale, and specifically denied the same. On October 21, 1925, the chancery court heard the report of sale of the commissioner and the exceptions thereto, and the motion by the Woffords to set the sale aside and to redeem the land, and the response thereto, and the oral evidence of Wheeler, Young and Reese, and the court found that the sale was in all respects properly conducted, and that the Woffords had no right to redeem, and overruled the exceptions to the report of sale, and entered its decree confirming the same and directing the commissioner to make a deed to Young, the purchaser.

On December 14, 1925, which was the first day the court would meet after rendition of the confirmation decree, the Woffords filed their petition to rehear the former motion to set aside the sale, in which they reiterated the facts substantially as above set forth as grounds for vacating the sale. They said, among other things, that they were misled by the actions of Mercer in the foreclosure suit, who informed them that he had no intention to deprive them of their farm; that he intended to foreclose and bid the land in at the sale, and that all he wanted was his money, and that, if the Woffords would pay him his money in the fall, they should have their lands back; that they were, by these representations, lulled into

security, and gave no further attention to the foreclosure proceedings. They set up that the foreclosure proceedings were all misleading as to a description of the property, in that the entire interest was advertised to be sold, whereas the Woffords only owned a half undivided interest, and a widow's interest, and the decree failed to declare her interest and to fix the interest of the owner of the other undivided interest; that, as a result, the apparent title to the entire tract had been placed in the purchaser. The Woffords further alleged that they had new evidence which they were unable to produce at the former hearing through no fault of theirs. They again asked that the sale be set aside and that they be allowed to pay the purchaser the purchase money, and asked that he be required to account for the rents.

C. G. Young filed a demurrer and response to this additional petition, and alleged that the issue was *res judicata,* and denied all the allegations of the petition.

There was the following stipulation of facts: "Right after the rendition of the decree of October 21, 1925, appellants engaged other counsel, who went to Marion, Arkansas, to examine the record, and found that the decree had not then been reduced to writing, and that the report of sale indicated that the entire interest in the land had been sold; counsel called the attention of the clerk to this state of affairs, pointing out that the decree had clouded the title of the bystander, Jessie May Smith. Counsel was in Marion again on December 14, 1925, and the clerk called his attention to the interpolation which the clerk had made in the report of sale and the decree, by adding the words, "all the interests of the defendants herein." Counsel asked to see the published notice of sale, but this could not be found. Counsel later procured a copy of the paper in which the notice of sale was published, and filed it. The notice is copied in the stipulation. It is further stipulated that Mr. Mercer's attorney was present at the sale and bid for Mr. Mercer the amount of the debt and costs. Also that the petition for receiver was never presented to the court, but instead, an arrange-

ment was made between counsel, as a result of which W. B. Rhodes, cashier of the local bank, collected the rents as custodian. That Rhodes collected $1,038 of the rents for 1925, and J. L. Wofford collected $155. That C. G. Young now claims only two-thirds of the rents, and Rhodes paid over to Jessie May Smith $346, being one-third of the amount he had collected. That there was a Federal Land Bank loan, a prior lien on the land, amounting to $1,820 at date of sale. That Col. Berry represented appellants at the trial of the first motion, October 21, 1925, and R. V. Wheeler testified for them. That Col. Berry got a postponement of the hearing from October 19 to October 21, in order to have Mr. Mercer present as a witness, but did not produce him, and, on October 21, the sale was confirmed.

There was testimony adduced by the Woffords tending to prove the facts set forth in their petition to set aside the sale. Two witnesses, who had been landowners in Crittenden County and who were familiar with land values there, testified, in effect, that the land in controversy was worth $90 an acre. Wofford and his sister, Jessie May Smith, the other owner of the undivided half interest in the fee of the land, testified that Mercer told them that he was going to file suit in the fall to protect his interest, but stated to them the sale would not take place, and that the Woffords would have plenty of time to redeem the land. Wofford testified that he was not present at the sale and did not know of it until after it occurred. He then employed an attorney, and got the affidavits of landowners appraising the land, and turned them over to his attorney. He got up money to make the tender and six affidavits of landowners as to the value of the land. He was present in court when the petition to set aside the sale was heard, but was not familiar with court procedure, and did not know what was going on. He stated that Mercer told him that if he sold the land he would buy it in and give witness a chance to buy it back.

Mercer testified to the effect that he employed an attorney to foreclose. He wrote to his attorney, asking

when the sale would take place, and had a reply to the effect that the sale had already taken place. Witness then wrote that he was sorry he had not learned of the sale in time to attend. His attorney wrote him, but he did not get the letter. The effect of his testimony in regard to the conversation with Wofford and his sister was that he assured them that he did not want the land. He told them that the foreclosure proceedings had been started, and it was possible that he might not buy the land, but might have to buy it to protect himself. It was his intention, if he purchased the land and they raised the money, to deed the land back to them upon their payment of his debt, costs and attorney's fee. He gave Jessie May Smith that impression in his conversation with her. He urged her to get the matter straightened out before the sale. She did not do this, as she continued with the impression that witness would buy and let them redeem, as was in fact witness' intention. Witness had never seen the land, but was familiar with land values, and placed a value of $75 an acre on the land. Witness did not tell Jessie May Smith that he would continue the case until fall, because he was always under the impression that he could be the one to buy in the land at the sale, and he did not think it made any difference.

The decree, on the hearing of the final petition, recites that it was heard *at chambers in vacation by consent,* upon the petition of the Woffords and the demurrer and response of Young and the testimony on file. The court thereupon entered its decree overruling the petition and refusing to set aside the sale, and dismissed the petition of the Woffords, and decreed certain rents to Young, from which the Woffords prayed an appeal.

1. The court had jurisdiction to hear and determine the second petition of the appellees to set aside the sale of June 12, 1925. Although a former petition to that effect had been filed and overruled, this second petition was filed at an adjourned day of the same term of court and on the last day of the adjourned term. The issue

was joined by the appellees on this petition, and a hearing thereon was had by consent in vacation. The decree from which this appeal comes so recites. Authority for such procedure is found in § 2190 of C. & M. Digest. See also *Bickle* v. *Turner*, 103 Ark. 536, 202 S. W. 203; *Davis* v. *Sparks,* 135 Ark. 412, 205 S. W. 803. The court had not adjourned *sine die* at the time the second petition to vacate the sale was filed, and, even though such petition was filed on the last day of the adjourned term, that was sufficient to give the court jurisdiction to hear and determine the issue joined on such petition, and the statute above confers upon a chancellor authority to try causes by consent of parties and to render decrees in vacation. See *Wells* v. *Baker Lumber Co.,* 107 Ark. 415, 155 S. W. 122; *Mydyett* v. *Kirby,* 129 Ark. 301, 195 S. W. 674; *Tire Co.* v. *McFarlane,* 146 Ark. 491, 225 S. W. 632.

2. The trial court erred in confirming the report of the commissioner and approving the sale made by him of the land in controversy on June 11, 1925. We have set forth fully the testimony bearing upon this issue. It speaks for itself; we deem it unnecessary to discuss the testimony in detail. The decided preponderance of the evidence shows that the lands were sold and purchased by the appellee, Young, for a grossly inadequate price. The appellee paid the sum of $1,314.13 for the land. He received rents for the land for the year he purchased, amounting to $692. The lands were thus acquired by the appellee for a net outlay of $622.13. A preponderance of the evidence shows that the entire farm, unincumbered, was worth $14,400; that the net value of J. L. Wofford's undivided half interest in the land is $6,290. The testimony of Mercer, the mortgagee, was to the effect that he gave the Woffords, the mortgagors, to understand that it was his intention to buy in the land at the foreclosure sale and to permit them to redeem the same by paying the amount of their mortgage debt and the costs of the foreclosure proceedings. His testimony shows that he would have consummated this purpose if he had

received the letter of his attorney advising him of the date of the sale.

Without reiterating the testimony on behalf of the appellants, it tends strongly to prove that they believed that they were secure in the promise of Mercer that, if the land was sold, he would buy it in and give the appellants a chance to buy it back. It cannot be doubted, from the testimony in this record, that the appellants were lulled into security by the conversations with Mercer, in which he assured them that they would have an opportunity to redeem the land by paying their debt to Mercer and the cost of the foreclosure proceedings. We are convinced that, if the appellants had not believed and trusted Mercer to thus protect their interests, as he assured them he would, the appellants would have protected themselves from the sacrifice of their property at the sale through some one else. Because, for aught that appears to the contrary, they experienced no difficulty in raising the necessary funds to redeem the lands from the sale.

The case in the facts comes well within the doctrine announced by this court, through Chief Justice McCulloch, in *Chaplin* v. *Quisenberry,* 138 Ark. 68, 210 S. W. 341, where we held, quoting syllabus:

"The court properly refused to confirm a judicial sale where the property brought a grossly inadequate price and the sale was attended with circumstances working out a harsh result against the owner's interests, though the purchaser himself was guilty of no fraud or misconduct." See also other cases cited in that opinion.

. 3. The appellee, Young, as the purchaser of an undivided half interest of the Woffords in the land in controversy, is entitled to an undivided half interest in the rents of the land for the year 1925 from the date of his purchase. That proportion of the rent of the land for the year 1925 earned prior to the date of the sale should be awarded to the appellants, and that proportion of the rents for the year 1925 earned subsequent to the date of his purchase should be awarded to the appellee

Young. This result necessarily follows as a corollary to the rule announced in *North American Trust Co.* v. *Burrow,* 68 Ark. 584, 60 S. W. 950; *Gailey* v. *Rickets,* 123 Ark. 18, 184 S. W. 422; *Tallman* v. *Heuck,* 152 Ark. 438, 238 S. W. 603.

The decree is therefore reversed, and the cause is remanded with directions to the chancery court to enter a decree. vacating its decree confirming the sale of the land in controversy to the appellee, canceling the deed of its commissioner to the appellee, and quieting title of the appellants to the lands in controversy upon their payment to the appellee of the amount of the purchase money with interest thereon from the date of his purchase at the rate of six per cent. per annum until paid, and awarding rents to the respective parties as herein directed, and for such other and further proceedings as may be necessary according to law and not inconsistent with this opinion.