WOFFORD *v.* JACKSON.

4-4750

Opinion delivered October 25, 1937.

*R. V. Wheeler* and *Kenneth Rayner,* for appellant.
*A. B. Shafer* and *E. C. Gathings,* for appellee.

HUMPHREYS, J.   This suit was brought by appellant in the chancery court of Crittenden county against appellee to charge her as a constructive trustee holding the legal title to the N½ NE¼ of section 4, township 5 north, range 7 east, in Crittenden county, Arkansas.

Appellee filed an answer denying that she holds the legal title of said land in trust for the benefit of appellant, but, on the contrary, alleges that she holds the legal title thereto as purchaser thereof for her own benefit at a foreclosure sale of a mortgage executed by appellant

and Frances Wofford, his stepmother, to J. L. Mercer & Co.

The cause was submitted to the court upon the pleadings and testimony adduced by the parties, which resulted in a decree dismissing appellant's complaint, from which is this appeal.

The record reflects by undisputed evidence that J. F. Wofford died intestate in December, 1922, owning the NE¼ of said section of land, and leaving as his only heirs appellant and appellee who were adults and his widow, Frances Wofford. Frances Wofford was the stepmother of appellant and appellee. Prior to the death of J. F. Wofford he and his wife, in 1918, executed a mortgage on the 160-acre tract of land to the Federal Land Bank for $2,000 which has never been paid. At the time of the death of J. F. Wofford, appellee was residing with her husband in Kentucky and appellant was residing with his father and stepmother on the 160-acre tract and was managing the farm. After his father's death he continued to reside on the land with his stepmother and he continued to manage the farm. On February 5, 1925, appellant, appellee and Frances Wofford executed a partition deed of the lands allocating the north 80 acres to appellant and the south 80 acres to appellee subject to the dower rights of Frances Wofford. Frances Wofford was assigned dower in each of the 80-acre tracts so that the land assigned to her was in a body. In the operation of the farm, appellant and his stepmother were compelled to borrow $676 from J. L. Mercer & Co., and for that and further advances, they executed a mortgage on their interests in the land to secure same. Some time after the debt secured by the mortgage became due, Mercer demanded payment, and upon failure to pay him he foreclosed this mortgage subject to the mortgage to the Federal Land Bank and Young purchased the interest of appellant and his stepmother for $1,314.13, that being the amount due Mercer on the mortgage at that time including the additional advances. Appellant employed lawyers to oppose the confirmation of the sale to Young, but they were unsuccessful. Later appellant employed

lawyers, Fisher & Raynor, to bring suit to set aside the sale. Appellee agreed to pay a part of the fee to these lawyers because in the foreclosure there was some doubt as to whether the 80 acres allocated to her was included in the description and she wanted her 80-acre tract disentangled from the interest of appellant. Appellant lost the suit in the chancery court and appealed the case to the Supreme Court and prevailed. This case is styled *Wofford* v. *Young,* and is reported in 173 Ark. 802, 293 S. W. 725. Appellee was not a party of record to the Mercer foreclosure suit, nor to the petition to set aside the sale to Young under it. When the sale was set aside appellant was unable to raise the money to redeem from the Mercer mortgage or from Young who had bought it and there was a resale of the property of the interest of appellant and his stepmother to satisfy the mortgage. After Young purchased the land at the first mortgage sale, he took possession of the north 80-acre tract and the dower interest of Frances Wofford and ousted appellant from the possession thereof and he, appellant, moved to Memphis. Appellant was unable to pay the attorney's fee and court costs incurred in getting the sale set aside and in procuring a resale of the property. Appellee obligated herself to pay the court cost, some of which she had advanced, and the attorney's fee of $1,500. In order to help her brother, she offered to raise a part of the money if he would raise the rest of it to redeem the land from the Mercer mortgage, but he failed to do that. The resale of the land was made on January 5, 1928, and, through the advice of attorney, Fisher, appellee purchased same, procured a commissioner's deed and went into possession of the land. She then executed a mortgage thereon to secure the attorney's fee of $1,500 and afterwards paid it all except about $500 or $600 which she still owes. Appellee continued to reside upon the land and took care of her stepmother until her stepmother died in 1930. In January, 1932, she received a letter from appellant stating that he was in financial straits, unable to get work and that his wife was sick.

Appellee testified that she bought the property for her benefit to protect herself against the amount she had paid out and the obligation she had incurred and not in trust for appellant; that all she had done in the matter was to help her brother as far as she could to redeem his land from the Mercer & Co. mortgage; that after receiving the letter from him she went to Memphis and brought him back and rented him 20 acres of land on the north side of the place as a share-cropper; that she furnished him during the year 1932 during which year he made a crop; that he remained during the year 1933 and obtained his supplies from A. C. Oliver on a waiver from her; that she authorized Oliver to furnish appellant $85 to make his crop; that appellant made two bales of cotton and 1,075 pounds of seed cotton and came out $22.80 ahead of his account, which amount she authorized Oliver to pay to appellant so that he might have something to live on; that during the year 1934 appellant rented the land from her and was furnished by A. C. Oliver who required him to obtain a waiver from her; that at the close of the year Oliver paid appellee $96 rent and paid appellant $122.81 in cash after settling his account; that appellant had never claimed the property or any interest therein after she bought it at the foreclosure sale and had rented a part of it from her and recognized her as his landlord until he brought this suit.

A. C. Oliver testified that in 1933 appellant applied to him for supplies to make a crop and told him that the land on which he was living belonged to his sister, appellee, that he was unable to redeem it from the Mercer & Co. mortgage or from Young who had bought it at the first sale, and that rather than have some third party buy it in at the mortgage sale he preferred for appellee, his sister, to get it; that based upon this information he required appellant to get a waiver from appellee before he would furnish him; that he got the written waiver and brought it to him and the waiver appears in this record; that in 1934 he furnished appellant again, but before doing so required him to get a written waiver from appellee; that out of the crop that year appellant paid

appellee $96 for rent and, after settling his account, witness paid appellant $122.81 in cash; that in the spring of 1935 appellant again requested him to advance him supplies on the crop and when he asked appellant for a waiver from appellee he said he did not have to get a waiver because he owned an interest in the land; that witness said to him, "It's funny you coming up here now and claiming an interest in the place when you never claimed it before"; that appellant stated that one of the attorneys who had theretofore prosecuted the suit had told him, appellant, he could get an interest in the place; that appellant failed to bring the waiver and witness refused to furnish him that year.

Appellant testified that after employing Mr. Fisher and Mr. Raynor to get the first mortgage sale set aside appellee took charge of the lawsuit and told him she would treat him right and that he made no effort to get up the money to redeem the land or pay the attorney's fee, but just left it all to appellee trusting that she would pay off the Mercer mortgage or the purchaser at the first sale and the attorney's fee and after repaying herself out of the rents and profits would turn the land over to him; that he did not know the land had been resold, but thought appellee had redeemed it from Young, who had bought it at the first sale; that he was dispossessed by Mr. Young and then left the place and went to Memphis where he remained until appellee brought him back in 1932; that after he came back appellee handled his cotton and put the money in her pocket; that she furnished him, but would only give him his meat and bread and no money. Appellant admitted that Oliver furnished him, but denied that he had paid him rent for appellee or that he, himself, had paid appellee rent on the land and stated that when he discovered that appellee had bought the land in her own name at the second foreclosure sale he brought this suit.

Mr. Fisher testified in the case corroborating appellee's testimony relative to appellant's failing to pay his attorney's fee and failing to get up the money or any part of it to redeem the land, and also to the effect that

he advised appellee to buy the land at the second foreclosure sale in order to protect herself; also that after she bought it in she mortgaged the land to him to secure his fee and afterwards paid the larger part of it.

Appellant does not contend that he is entitled to recover on any written or oral contract to the effect that appellee was to buy the land in at the second foreclosure sale for his benefit. He contends that under all the circumstances surrounding the transaction equity should declare under the doctrine of constructive trusts that she holds the legal title to the land by virtue of her purchase for his benefit. In defining what a constructive trust is, this court in the case of *Haskell* v. *Patterson,* 165 Ark. 65, 262 S. W. 1002, quoted as follows from Pomeroy's Equity Jurisprudence:

"Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and, in most cases, contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed trusts in *invitum;* and this phrase furnished a criterion, generally accurate and sufficient, for determining what trusts are truly 'constructive.' An exhaustive analysis would show, I think, that all instances of constructive trusts, properly so-called, may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source."

And, again, in *Edlin* v. *Moser* in 176 Ark. 1107, 5 S. W. (2d) 923, quoted from Pomeroy as follows:

"If one party obtains the legal title to property not only by fraud, or by violation of confidence or of the fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

Relative to the character of evidence necessary to establish a constructive trust this court said, in substance, in *Tillar* v. *Henry*, 75 Ark. 446, 88 S. W. 573, and in *Eason* v. *Wheeler*, 167 Ark. 320, 268 S. W. 29, that it is not only necessary to show that such a trust exists by a preponderance of the evidence, but by evidence that is full, clear and convincing.

Keeping in mind this rule of evidence and this definition of constructive trusts announced in the cases referred to we are unable to say that appellee's purchase of said land at the second mortgage foreclosure sale was for the benefit of appellant. At the time of the purchase, appellee occupied no fiduciary relationship toward appellant. Long before this the land had been divided by a partition deed and she was not his cotenant. Her statement that she was trying to help her brother redeem his 80-acre tract is not enough to show that she intended to go to the extent of buying it in for his benefit. Her payment of the costs and the attorney's fee can be attributed to her sisterly interest in him. According to the weight of the evidence he abandoned the whole thing and left the burden upon appellee. He refused to pay the attorney's fee or to get up any part of the money to redeem his land or to buy it in at the second foreclosure sale. Several years thereafter, he wrote an appealing letter to his sister to the effect that he was in financial straits, unable to get a job and that his wife was sick. According to the weight of the evidence she went to Memphis and got him and his wife and rented them a portion of the land for the year 1932 and furnished him during the crop season; that he remained on the land as her

tenant during the years 1933 and 1934 and in 1934 paid her $96 rent out of the crop. Appellant's statement to Oliver, who was a disinterested witness, reflects that he knew all about the transaction and that he preferred for his sister to buy in the land as her own and for her own benefit than have some third party to do so. We do not think there is anything in the record tending to establish a constructive trust in appellant's favor.

Appellant cites and relies upon the case of *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. (2d) 88, as a case on all fours with this case and controlling here; but in that case the evidence was clear, satisfactory and convincing that the brothers and sisters of Monroe Armstrong conveyed him the land in controversy in order that he might secure money to pay the existing indebtedness against the land and for the purpose of managing the land and paying whatever indebtedness he might thus incur out of the rents and profits and that when that purpose was accomplished all the brothers and sisters with him should become owners of the land, share and share alike. The evidence in the instant case does not preponderate in favor of appellant in his contention that appellee holds the legal title as a constructive trustee for him. To our minds the evidence is clear, satisfactory and convincing that appellee bought in the land for her own benefit and not for his.

Apppellant contends even though the evidence fails to show that appellee purchased the land at the second foreclosure sale for the benefit of appellant under the doctrine of constructive trusts, that having joined in the partition deed of the 160-acre tract on February 5, 1925, allocating 80 acres thereof to appellant, her purchase at the second mortgage sale was an after acquired title and redounded to appellant's benefit as a matter of law. We cannot agree that this was the effect of the partition deed. Appellant acquired his title to an undivided interest in the 160 acres from his father, and not from appellee. The purpose of the partition deed was to segregate or allocate the north 80-acre tract to appellant and the south 80-acre tract to appellee. The legal effect of such deeds

is correctly announced in R. C. L., Vol. 20, p. 53, as follows: "It is generally held that a partition of land creates no new title to the shares set off to the parties to be held in severalty, whether the partition be made by act of the parties or by a judgment or decree of the court. While its effect is to allocate the share of each in his allotted parcel of the land, and extinguish his interest in all of the others, the title by which he holds his divided share is the same as that by which his undivided interest in the estate in common was held. * * *."

No error appearing, the decree is affirmed.