HUTCHISON v. SHEPPARD.

5-659                                                    279 S. W. 2d 33

Opinion delivered May 9, 1955.

[Rehearing denied June 6, 1955.]

*Pickens & Pickens,* for appellant.

*Kaneaster Hodges,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by Kate Anthony Sheppard and others to recover possession of 120 acres of land.   The defendants assert title to the property and, if their claim of title should be rejected, seek to recover the value of their improvements to the land. The chancellor held that Mrs. Sheppard has a life estate which entitles her to possession, but the defendants were awarded $1,000 for their improvements.   The defendants have appealed on the issue of title, and the plaintiffs have cross appealed from the $1,000 allowance for improvements.

The principal issues turn upon the construction of three separate deeds, each presenting separate questions of law.   The first deed was executed by Samuel Anthony, who was the father of four children—Kate (now Mrs. Sheppard), Edgar, Ethel, and Emma.   On January 27, 1914, Samuel Anthony conveyed 280 acres, including the 120 now in dispute, to Kate and Edgar "for the term of their natural lives and to the heirs of each of their bodies in fee."   The habendum clause reads: "To Have and To Hold, all of the above described lands unto the parties of the second part during the term of their natural lives, then to descend in fee simple to the heirs of their brother [body] begotten.   If either one of the parties of the second part should die without issue surviving, then that one's live [life] estate, or the remainder thereof to vest in the survivor."

In 1924 Kate and Edgar partitioned 240 of the 280 acres, the land now in question going to Edgar.   The material parts of the partition deed are these:

"Whereas, [Edgar and Kate] are the owners for life as tenants in common and are in possession of the following described lands [240 acres described], and;

"Whereas, the said tenants in common acquired a life estate in said lands under . . . a certain deed of conveyance from their father Samuel W. Anthony, dated the 27th day of January, 1914 . . . and;

"Whereas, the said tenants in common have agreed upon a partition of said lands so that each may have and hold his or her interest therein in severalty and in dividing said lands have made the allotment to each as near in value as possible:

"Now, Therefore, for the purpose of making partition of all the real property above described, and in consideration thereof, the parties hereto do mutually covenant and agree, each with the other, as follows:

"[First, Edgar, in language similar to that next to be quoted, conveys to Kate the 120 acres allotted to her.]

"Second: [Kate], for the purpose of said partition and in consideration thereof, does by these presents, grant, sell and quitclaim unto the said Edgar Anthony, all her right, title, interest and claim in and to [the 120 acres now in controversy].

"To Have and To Hold the same unto the said Edgar Anthony and unto his heirs and assigns forever, together with all the tenements thereon, and rights, ways, improvements, appurtenances and hereditaments thereunto belonging."

After the land had been so partitioned Edgar Anthony, on November 23, 1927, conveyed his 120 acres to Virgil Hutchison by the third deed involved, which we quote in part:

"Warranty Deed

"Know All Men By These Presents:

"That I, Edgar Anthony, . . . do hereby grant, bargain, sell and convey unto . . . Virgil Hutchison

and unto his heirs and assigns forever the following lands . . . :

"My entire interest in and to [the 120 acres now in dispute].

"To have and to hold the same unto the said Virgil Hutchison and unto his heirs and assigns forever, with all appurtenances thereunto belonging.

"And I hereby covenant with the said Virgil Hutchison that I will forever warrant and defend the title to my interest in said lands against all claims whatever."

Virgil Hutchison took possession under the above deed, and by various mesne conveyances his title has now passed to the appellants, Porter and Zelma Hutchison. Edgar Anthony died without issue on January 7, 1953, his only child having predeceased him before reaching maturity. After Edgar's death the present action in ejectment (later transferred to equity) was brought by Kate Anthony Sheppard, her sister Ethel, and the two children of the third sister, Emma Anthony Mantooth, who had died on some date not disclosed by the record. It is shown by undisputed proof that Mrs. Sheppard is childless and is past the childbearing age. In *Greer* v. *Parker*, 209 Ark. 553, 191 S. W. 2d 584, we gave effect to a stipulation that the life tenant, a woman of sixty-six, was too old to have children.

The appellants' two asserted claims to the fee simple title may be disposed of quickly. First, it is contended that the deed from Samuel Anthony to Kate and Edgar conveyed the fee by operation of the Rule in Shelley's Case. That rule, however, applies only when the remainder is to the life tenant's heirs generally. Here the remainder was to the life tenants' bodily heirs, and it has long been settled that such a conveyance creates a life estate in the grantee with a contingent remainder to his bodily heirs. *Horsley* v. *Hilburn*, 44 Ark. 458. Nor does it matter that Edgar Anthony had a child who predeceased him; for, as the *Horsley* case held, the remainder does not vest until the death of the life tenant with issue surviving.

Second, the appellants rely upon a tax title which they purchased in 1947 from R. D. Wilmans. It was, however, the duty of the appellants and their predecessors in title, as holders of the life estate, to keep the taxes paid. Ark. Stats. 1947, § 84-922. We need not cite the many cases holding that a life tenant's purchase of a tax title resulting from his failure to pay the taxes amounts merely to a redemption.

The appellants also contend that even if their claims to the fee simple are rejected they are nevertheless entitled to retain possession during Kate Anthony Sheppard's lifetime. It will be remembered that Samuel Anthony's deed to Kate and Edgar and their bodily heirs provided that if either should die without issue his life estate, or the remainder thereof, should vest in the survivor. It is the appellants' theory that, with respect to the 120 acres now in issue, Kate's rights as surviving life tenant passed to Edgar and his grantees as a result of the 1924 partition deed.

Such a construction would violate the principles that apply uniquely to partition deeds. The law sensibly holds that when cotenants simply agree upon a division of the common property, with no independent consideration being paid, their purpose is taken to be the severance of the unity of possession rather than the creation of a new estate in either party. ''It is generally held that a partition of land creates no new title to the shares set off to the parties to be held in severalty, whether the partition be made by act of the parties or by a judgment or decree of the court. While its effect is to allocate the share of each in his allotted parcel of the land, and extinguish his interest in all of the others, the title by which he holds his divided share is the same as that by which his undivided interest in the estate in common was held.'' *Wofford* v. *Jackson*, 194 Ark. 1049, 111 S. W. 2d 542.

This court has often recognized and applied the rule. For example, in *Webb* v. *Nease,* 66 Ark. 155, 49 S. W. 1081, a mother and son owned 200 acres together, the son owning an undivided three-fourths and the mother own-

ing the other one-fourth, with rights of dower and homestead in the whole. By oral agreement, confirmed by possession, they partitioned the land so that each took about 100 acres. It was held that the mother did not thereby acquire the fee to her allotted acreage. "When it is ascertained that she had certain interests in this land, then the oral agreement of partition made with the other party interested in the land should, in the absence of evidence to the contrary, be attributed to a recognition and allotment of the interests that she actually owned, and not be allowed to create a new estate in her." Other applications of the principle may be found in *Liberty Central Trust Co.* v. *Vaughan,* 167 Ark. 219, 267 S. W. 361, and *Bowen* v. *Frank,* 179 Ark. 1004, 18 S. W. 2d 1037. The Supreme Court of Illinois summarized the matter by saying: "A decree or judgment in partition has no other effect than to sever the unity of possession, and does not vest in either of the cotenants any new or different title. After the partition each party has precisely the same title which he had before, but that which was before a joint possession is turned into a several one. The same is true of a voluntary partition. Each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and he does not derive title or interest from his cotenant by such transfer so that either can be said to hold under the other." *Cole* v. *Cole,* 292 Ill. 154, 126 N. E. 752, 38 A. L. R. 719.

When Kate and Edgar Anthony voluntarily divided 240 acres in 1924 they declared in the preamble to their conveyance that they were "the owners for life as tenants in common," that they had acquired "a life estate" from Samuel Anthony, and that the partition had been agreed upon so that each might "hold his or her interest therein in severalty." Manifestly the only estate that Kate and Edgar held *in common* was the joint life tenancy that would exist only so long as both were living. This was likewise the only estate as to which unity of possession existed. By the rules of construction already mentioned, they are not deemed to have intended any-

thing more than a severance of their common right of possession.

It is true that each of the cotenants also had an estate in the land that was *not* held in common. That is, if either should die without issue the survivor would be entitled, under the terms of Samuel Anthony's 1914 deed, to a life estate in the whole rather than in an undivided half. But this right of survivorship was obviously not held in common; to the contrary, the distinct rights of survivorship were mutually exclusive, in that there could be only one survivor. Since there could never be a joint possession under the survivorship clause, there was no occasion to divide it so that each might hold his interest in severalty. Hence to construe the partition deed as transferring Kate's rights of survivorship (in this 120 acres) to Edgar would result in the creation of a new title in Edgar. He would then hold not of the common grantor but of his cotenant. As the law does not put this interpretation upon a simple partition deed, the appellants' claim to Mrs. Sheppard's right of survivorship must be denied.

There remains the question of improvements. The appellants' proof tends to show that the improvements are worth some $2,600. It is now contended that the chancellor's allowance of $1,000 is demonstrably inadequate. The appellees insist that the appellants knew all along that their tenure was limited, so that they could not in good faith have believed themselves to be the owners of the land. Ark. Stats., § 34-1423.

Inasmuch as the appeal and cross appeal bring this entire issue to us *de novo,* we must attempt to determine from the record what amount, if any, should be allowed for the improvements. In approaching this issue we are confronted at the outset by an insurmountable defect of proof in the record. That is, it is not shown whether Samuel Anthony was still alive when Edgar sold his 120 acres in 1927, nor, if Samuel was then dead, whether he had died testate or intestate.

The importance of this information is easily understood. When Samuel Anthony conveyed to Kate and Edgar for life, with remainder to their bodily heirs, there remained in the grantor a divestable reversion, by which the fee would revert to him if the grantees should die without bodily heirs. Such a reversion may be transferred by deed or by will and is a subject of inheritance upon the reversioner's death intestate. *Davis* v. *Davis,* 219 Ark. 623, 243 S. W. 2d 739; Core, Transmissibility of Certain Contingent Future Interests, 5 Ark. L. Rev. 111, 136.

Although the record is silent, it seems quite likely that Samuel Anthony died before 1927. It is alleged that part of the property described in the complaint was acquired by Samuel Anthony in 1866. If he was then as much as thirty years old he would, if alive, have been past ninety in 1927. But if he had died intestate his reversionary interest would have descended by the laws of descent and distribution, with Edgar inheriting a one-fourth interest.

In 1927 Edgar, by the third deed involved, conveyed his "entire interest" in the land now in question and warranted "the title to my interest" in the land. Although this deed does not purport to convey the fee or any given lesser estate, within the operation of the after-acquired title statute, Ark. Stats., § 50-404, *Wells* v. *Chase,* 76 Ark. 417, 88 S. W. 1030, it was clearly effective to transfer whatever alienable interest Edgar had in the land. If, therefore, he had received by will or by intestacy a share in the reversionary estate, that interest now belongs to the appellants. Since Edgar died without issue and since Mrs. Sheppard, the other life tenant, is about seventy years old and childless, it is a practical certainty that the reversion will become a fee simple estate upon Mrs. Sheppard's death.

These circumstances may bear upon the issue of improvements in at least two ways. First, if the appellants had not only an estate *pur autre vie* but also an interest in the reversion, even though they were not

aware of the latter, this fact may affect their legal right to improve the property—a question upon which we need not speculate in the absence of definite proof. Second, if the appellants have, for example, a vested one-fourth interest which will become an estate in possession upon Mrs. Sheppard's death, it would be inequitable to reimburse them *in full* for improvements which are partly theirs.

This question of the reversion seems to have been overlooked by the parties in both courts and of course was not called to the chancellor's attention. In this situation, where by common inadvertence an issue is not fully developed, it is our practice in equity cases to remand the case for further proof. *Brizzolara* v. *Powell*, 214 Ark. 870, 218 S. W. 2d 728. We therefore set aside the award of improvements and remand the cause upon that issue.

McFADDIN, J., is of the opinion that the entire suit is premature so long as Kate Anthony Sheppard is living.

SEAMSTER, C. J., not participating.