LONG PRAIRIE LEVEE DISTRICT *v.* WALL.

5-1149                                                298 S. W. 2d 52

Opinion delivered February 4, 1957.

*R. L. Searcy, Jr.,* and *Graves & Graves,* for appellant.

*Keith, Clegg & Eckert* and *McKay, Anderson & Crumpler,* for appellee.

GEORGE ROSE SMITH, J.   This is a bill in equity by which John W. Wall and J. R. Arnold, Jr., seek to quiet their title to an undivided fifteen-fortieths interest in the oil, gas, and other minerals underlying a forty-acre tract.   The appellant levee district is the principal defendant and bases its claim of ownership upon its purchase of the forty acres in foreclosure suits brought for the collection of delinquent levee assessments.   The chancellor held that the improvement district sales did not af-

fect the plaintiffs' interest in the minerals; the decree granted the relief sought.

On December 24, 1938, Wall and Arnold purchased an undivided fifteen-fortieths mineral interest from F. R. Redden, who then owned the forty acres in fee simple. The deed was recorded two days later and is the basis for the appellees' claim of title.

Later on the appellant brought suit to collect delinquent levee district assessments for the years 1937, 1938, 1939, and 1940. In that suit "F. R. Redding" was designated as the owner of the land, which was correctly described as the northeast quarter of the southwest quarter of Section 3, township 20 south, range 26 west. Wall and Arnold were not named in the suit; the district's officers testify that they had no actual knowledge of the mineral deed that was then on record. The district obtained a decree of foreclosure in 1944 and was the purchaser at the commissioner's sale. In like manner (except that Redden's name was correctly spelled) the district foreclosed its lien for the 1941 and 1942 assessments and again bought the land at the commissioner's sale, in 1946. After the expiration of the time for redemption the commissioner deeded the forty acres to the district, on September 13, 1948. When the district subsequently sold the land to third persons it reserved a half interest in the oil, gas, and other minerals. That reserved title constitutes the appellant's present claim of ownership.

We lay aside the district's contention that it should not have been required in the court below to elect to rely either upon the first foreclosure sale or upon the second, for in the view we take this issue is immaterial. Inasmuch as both sales appear to have been regularly conducted the question is whether the foreclosure proceedings affected the outstanding mineral interest that was owned by Wall and Arnold.

It cannot be doubted that the foreclosure sales ostensibly vested in the district the fee simple title to the forty acres, including the minerals. The land, as we have said, was accurately described, and such an un-

qualified description includes the minerals as well as the surface. *Osborn* v. *Ark. Ter. Oil & Gas Co.,* 103 Ark. 175, 146 S. W. 122; *Maloch* v. *Pryor,* 200 Ark. 380, 139 S. W. 2d 51.

Nor, apart from a statute to be mentioned in a moment, can it be doubted that the district obtained a good title despite its failure to name Wall and Arnold in the foreclosure proceedings. The district was created by Act 106 of 1905, which defines the foreclosure procedure and then provides: ''Such proceedings and judgment shall be in the nature of proceedings *in rem,* and it shall be immaterial that the ownership of said land be incorrectly alleged in said proceedings . . .'' In construing this identical language in other improvement district statutes we have repeatedly held that the district's failure to designate the true owner of the land does not affect the validity of the foreclosure sale. *Ballard* v. *Hunter,* 74 Ark. 174, 85 S. W. 252, affirmed 204 U. S. 241; *Pinkert* v. *Lamb,* 215 Ark. 879, 224 S. W. 2d 15; *Stith* v. *Pinkert,* 217 Ark. 871, 234 S. W. 2d 45, appeal dismissed, 341 U. S. 901. Here the district was mistaken in naming Redden as the sole owner of the land; but, under the rule of property established by the many decisions on the point, the error did not invalidate the sale.

The appellees insist, however, that the district had constructive notice of their recorded mineral deed and was therefore required by statute to make on its own initiative a separate assessment of benefits against the mineral interest. The statute relied upon was originally enacted in 1897 and now reads: ''When the mineral rights (and) or timber rights in any land shall, by conveyance or otherwise, be held by one or more persons, and the fee simple in the land by one or more other persons, it shall be the duty of the assessor when advised of the fact, either by personal notice, or by recording of the deeds in the office of the recorder of the county, to assess the mineral rights (and) or timber rights in said lands separate from the general property therein. And in such case a sale of the mineral rights (and) or timber rights for nonpayment of taxes shall not affect the title

to the land itself, nor shall a sale of the land for nonpayment of taxes affect the title to the mineral rights (and) or timber rights. When any mineral rights (and) or timber rights assessed as above set out, become forfeited on account of nonpayment of taxes, same shall in all things be certified to and redeemed in the same manner as is now provided for the certification and redemption of real estate upon which taxes duly assessed have not been paid." Ark. Stats. 1947, § 84-203.

It is plain that this statute was intended to apply to the assessment of property for general taxes rather than to an assessment of benefits by an improvement district. The statute refers to the nonpayment of "taxes," to mineral rights "forfeited" for such nonpayment, and to the "certification" of those rights. This language is appropriate to the field of general taxation but not to that of improvement district assessments. The duty to make the separate assessment is imposed by the statute upon the county assessor, who ordinarily has nothing to do with improvement district assessments and does not even have custody of the books in which the assessed benefits are recorded. The legislature certainly did not mean to impose upon the county assessor a duty which that officer would be altogether unable to perform.

The appellees point out that as a matter of fairness the owner of constructively severed minerals should not be required to pay for benefits received by the land as a whole; it is said that the justice of this assertion was recognized in *Lewis* v. *Delinquent Lands,* 182 Ark. 838, 33 S. W. 2d 379. Doubtless this is true, but the legislature provided a complete remedy by Act 359 of 1925: "The assessing officers of any improvement district may make a reassessment of the benefits annually, and in any such reassessment they may correct defective descriptions, and where tracts of land have been assessed as a whole such tract may be divided according to their ownership at the time of the reassessment." Ark. Stats., § 84-1209. Instead of applying for relief under this section of the statutes the appellees stood by for more than ten years and permitted the land to be sold to the district and

the period of redemption to expire. Their title to the mineral interest has now vested in the appellant.

The decree is reversed, and, since the title to land is involved, the cause will be remanded for the entry of a decree dismissing the complaint for want of equity.

McFADDIN, J., dissents.