Nuckolls v. Mantooth.

5-2392 & 5-2393                     350 S. W. 2d 512

Opinion delivered October 30, 1961.

*Pickens, Pickens & Boyce,* for appellant.

*Kaneaster Hodges,* for appellee.

GEORGE ROSE SMITH, J. These two appeals were consolidated in this court. The principal case is a partition suit in which the main question is that of determining the exact proportion in which the parties own two adjoining 120-acre tracts as tenants in common. In that appeal the two appellants, Joe and Bill Nuckolls, contend that the chancellor erred in awarding each of them only an undivided two-ninths interest in each tract. The other appeal, from the probate court, involves a distribution of accrued rent and will be governed by the decision in the chancery case.

The facts are not simple. The parties' common source of title, Samuel Anthony, formerly owned the entire 240 acres. Samuel had four children: Kate Sheppard, Edgar Anthony, Ethel Washam, and Emma Mantooth. In 1914 Samuel conveyed the 240 acres (and other land) to two of his children, Kate and Edgar, for life, with remainder to their bodily heirs. In an earlier case, *Hutchison* v. *Sheppard,* 225 Ark. 14, 279 S. W. 2d 33, we construed the 1914 deed and held that (a) it created a life estate in the two grantees during their joint lives; (b) it created a life estate in the surviving grantee upon the death of the other grantee without bodily heirs; and (c) there remained in the grantor.

Samuel, a reversion that would become an estate in possession upon the death of both grantees without bodily heirs. We also held that Samuel's reversion could be transferred by deed, by will, or by inheritance.

**Samuel** died in 1917. By the residuary clause in his will his reversionary interest in the 240 acres passed to three of his children, Kate, Edgar, and Emma Mantooth, equally.

In 1924 Kate and Edgar, who were entitled to possession as joint life tenants under their father's 1914 deed, divided the land by partition deed. The north 120 acres, known as the Sheppard farm, went to Kate, and the south 120 acres, later known as the Hutchison farm, went to Edgar. The construction of this partition deed is really the principal point of controversy in the present appeals.

From this point on the two tracts have different chains of title. We consider first the Hutchison farm, which Edgar received in the partition. In 1927 Edgar conveyed his entire interest in this 120-acre tract to Virgil Hutchison. In 1946 Emma Mantooth, who owned one third of the reversionary interest, died intestate. Her interest passed to her two sons, the appellees Loyd Mantooth and Herman Ireland. In 1953 Edgar died without bodily heirs.

Our decision in the first case was handed down in 1955, in a case involving only the Hutchison farm. In 1956 that farm was partitioned by a proceeding in equity. All the owners (Kate Sheppard, the two sons of Emma Mantooth, and the remote grantees of Virgil Hutchison) were parties to that partition suit. It is now immaterial whether the court's decree correctly determined the ownership of the parties, for there was no appeal. The partition was by public sale, and the land was bought in by Kate Sheppard as to an undivided four ninths and by Emma Mantooth's two sons as to the other undivided five ninths. Kate died intestate in 1959, survived only by two adopted sons, the appellants Joe and Bill Nuckolls, who inherited her interest in the land.

The chancellor held that the Hutchison farm is owned two ninths by Joe Nuckolls, two ninths by Bill Nuckolls, and the other five ninths by Emma Mantooth's two sons. This decision is plainly correct, for these interests conform to the purchase at the partition sale in 1956. Indeed, the only contention made by the appellants upon this phase of the case is that they are not bound by that decree, it being argued that they were bodily heirs of Kate Sheppard and should therefore have been made parties to the partition suit in 1956. The short answer to this contention is that adopted children are not bodily heirs of their foster parent. *Davis* v. *Davis*, 219 Ark. 623, 243 S. W. 2d 739.

The title to the Sheppard farm presents a more difficult question. This property was not involved in any of the earlier litigation and has not been the subject of any conveyance since Kate and Edgar divided it in 1924. Inasmuch as both Kate and Edgar, the grantees in the 1914 deed, died without bodily heirs it will be seen that their father's reversionary interest eventually ripened into complete title. One third of that reversionary interest passed under Samuel Anthony's will to Emma Mantooth, and that one third is now owned by Emma's two sons. The chancellor correctly so held. Another third of the reversionary interest passed by Samuel's will to Kate Sheppard, and that one third is now owned by Kate's heirs, her adopted sons. The chancellor correctly so held.

The dispute centers upon the remaining one-third interest in the Sheppard 120 acres. Under Samuel's will this reversionary interest passed to Edgar Anthony. The question is, was that one third conveyed by Edgar to Kate in the 1924 partition deed? The appellees contend that it was not. In that view the interest was still owned by Edgar at his death intestate in 1953; it would now be vested one third in Kate's heirs, one third in Emma's heirs, and one third in the other sister, the appellee Ethel Washam. The chancellor so held. On the other hand, the appellants contend that by the partition deed Edgar conveyed his reversionary interest in the Sheppard 120

acres to his sister Kate. In that view the interest is now owned by the appellants as the heirs of their foster mother.

The partition deed is perhaps open to either interpretation. It will be remembered that in 1924 Edgar and Kate each owned three separate estates in the entire 240 acres: (1) A joint life estate as long as both were living; (2) an inchoate right to a life estate by survivorship if the other life tenant should die without bodily heirs; and (3) a one-third interest in the reversion, received under the will of Samuel Anthony. It seems probable that Edgar and Kate did not realize in 1924 that they had a reversionary interest in the land, but their deed is to be construed according to its language rather than according to the parties' subjective intent. *Stegall* v. *Bugh,* 228 Ark. 632, 310 S. W. 2d 251.

The material parts of the partition deed read as follows:

"Whereas, the said Edgar Anthony and the said Kate Nuckolls are the owners for life as tenants in common and are in possession of the following described lands [240 acres described], and;

"Whereas, the said tenants in common acquired a life estate in said lands under . . . a certain deed of conveyance from their father, Samuel W. Anthony, dated the 27th day of January, 1914 . . . and;

"Whereas, the said tenants in common have agreed upon a partition of said lands so that each may have and hold his or her interest therein in severalty and in dividing said lands have made the allotment to each as near in value as possible;

"Now, Therefore, for the purpose of making partition of all the real property above described, and in consideration thereof, the parties hereto do mutually covenant and agree, each with the other, as follows:

"First: The said Edgar Anthony and Auttie Anthony, his wife, for the purpose of this partition and in

consideration thereof, do by these presents grant, sell and quitclaim unto the said Kate Nuckolls, all their right, title, interest, and claim, in and to [the Sheppard 120 acres].

"To have and to hold the same unto the said Kate Nuckolls, and unto her heirs and assigns forever, together with all the tenements thereon, and rights, ways, improvements, hereditaments and appurtenances thereunto belonging.

"Second: [Kate, in language similar to the above, conveys to Edgar the Hutchison 120 acres]."

The difficulty is this: Two of the preliminary recitals in the deed refer to the grantors' life estate in the land. It is then stated that the tenants in common have agreed upon a partition "of said lands" so that each may hold his interest in severalty. The granting clause then conveys all Edgar's "right, title, interest, and claim" to the Sheppard farm. The operative language in the deed, standing alone, would undoubtedly convey Edgar's reversionary interest as well as his life estate. The question is whether the broad sweep of the operative language is limited by the preliminary references to the life estate alone.

We think the better view to be that the deed conveyed the reversionary interest. It is a familiar rule of construction that where there is a conflict between the recitals in a deed and its operative language the latter is controlling. *Koplowitz* v. *Central Tr. Co.*, 135 N. J. Eq. 552, 39 Atl. 2d 452; *Yuscavage* v. *Hamlin*, 391 Pa. 13, 137 Atl. 2d 242. Of course this is not an inflexible rule in Arkansas, since we are committed to the principle of discovering the parties' meaning from the language of the deed as a whole. *Weatherly* v. *Purcell*, 217 Ark. 908, 234 S. W. 2d 32. Nevertheless, recognized rules of construction may be of value in the search for the parties' intention.

In this deed two of the prefatory paragraphs refer to the life estates vested in the grantors. But a third

preamble contains no such restriction; instead, it declares broadly that the parties' purpose is to effect a division "of said lands so that each may have and hold his or her interest therein in severalty." Similarly the granting clause, the most significant part of the deed, purports to convey all the grantors' interest in the land, without reservation. The parties' motive for partitioning the reversionary interest, which was held in common, was equally as strong as their motive for partitioning the life estate. In the circumstances we think the stability of real property titles will best be served by holding that these grantors meant all that they said, thus giving full effect to the plain language in the granting clause of their deed.

The appellees insist that in the earlier case, *Hutchison* v. *Sheppard, supra,* we held that the partition deed had the effect of dividing only the life estate that was jointly held by Edgar and Kate. We do not so construe the opinion. Our language was directed toward distinguishing between the joint life estate on the one hand and the survivorship life estate on the other. We held that the partition deed was effective as to the former but not as to the latter. We did not even consider what effect the deed might have had upon the reversion, for, as the opinion pointed out, the proof did not show when Samuel Anthony died and therefore did not show who owned the reversion at the time of the partition. There was no occasion for the court to speculate upon the abstract possibility that Edgar and Kate might have had an interest in the reversion in 1924 and that such an interest might or might not have been conveyed by the partition deed.

We conclude that the appellants are correct in contending that the Sheppard farm is owned one third by Joe Nuckolls, one third by Bill Nuckolls, one sixth by Loyd Mantooth, and one sixth by Herman Ireland. It follows that the chancery decree should have fixed the parties' ownership in that proportion and that the probate court should have distributed the disputed portion of the rent in the same ratio, so that Joe and Bill Nuckolls would

receive $166.44 each and the two sons of Emma Mantooth would receive $83.22 each.

It is also contended by the appellants that the chancellor erred in ordering a public sale of the land instead of a division in kind. Our review of the proof convinces us that the weight of the evidence supports the trial court's conclusion that the lands cannot be fairly divided in kind.

With respect to the Hutchison farm the chancery decree and the probate court judgment are affirmed; with respect to the Sheppard farm they are reversed and the causes remanded for further proceedings.

McFADDIN, J., would affirm the decree and judgment in all respects.