Alice BRADLEY et al *v.* Carl TEAGUE, Jr. et al and AMOCO PRODUCTION COMPANY

CA 79-126                                   589 S.W. 2d 200

Opinion delivered October 24, 1979
and released for publication November 16, 1979

*McKay, Chandler & Choate,* by: *R. L. Choate,* for cross-petitioner.

*Smith, Stroud, McClerkin, Dunn & Nutter,* by: *Hayes C. McClerkin,* for appellants.

*Keith, Clegg & Eckert,* for appellees.

M. STEELE HAYS, Judge. This case involves conflicting claims to mineral interests underlying a 32-acre tract in Columbia County. Appellees, Carl Teague, Jr. and Mary Sue Franklin Teague, his wife, and Ann Lewis Rives, the original plaintiffs, brought suit to quiet title to a portion of the mineral interests under the tract against Alice Bradley, Mary Jane Short, Gordon S. Foster, and Lucy Foster, his wife, the original defendants. Other parties came into the litigation as intervenors and additional defendants. The claim of appellees rests upon the ownership of Indiana Hanson Russ and the claim of appellants rests upon the ownership of other members of the family of Thomas Hanson, Sr.

The pertinent history of the lands is as follows: in 1919,

Thomas Hanson, Sr. and his wife conveyed an undivided 1/16th non-participating royalty interest in the minerals under 192 acres of a larger tract (710 acres) which included the 32-acre tract involved in this litigation.[1] In 1936, Hanson died intestate, survived by his widow and six children, one of whom was Indiana Hanson Russ.

In 1940, the widow and all of the Hanson children met at the home of Thomas Hanson, Sr., and entered into an oral division of the lands owned by Thomas Hanson, Sr., by which Indiana received a 112-acre tract, including the 32-acre tract in question. Jessie Hanson received a 120-acre tract; four children received tracts of 100 acres each; and the widow a life estate with power to execute oil and gas leases under the lands set apart to her and to receive bonuses and delay rentals thereunder. Each child entered into possession of the tract acquired under the oral division and made improvements thereon.

In September of 1949, a deed partitioning the lands according to the agreement was drafted which the family members signed with the exception of Indiana Hanson Russ who refused to do so. The widow and other five children filed a complaint and Lis Pendens in Chancery Court, naming Indiana Hanson Russ as defendant.[2] A decree was entered which divested Indiana Hanson Russ of her undivided interest in the lands of Thomas Hanson, Sr., except for the parcel set aside to her under the family settlement and investing title in her to that portion which was hers. The decree confirmed the division by the family settlement and quieted the title of the respective parties *as against all claims of the other parties*.

On May 9, 1964, Indiana Hanson Russ conveyed unto Carl Teague, Jr., and Mary Sue Franklin Teague, his wife,

---

[1]On November 28, 1919, Thomas Hanson, Sr. and his wife, entered into a contract with S.A. Ware and W.T. Owens which was subsequently interpreted by the Supreme Court of Arkansas, *Hanson v. Ware,* 224 Ark. 430, 274 S.W. 2d 359 (1955) as conveying an undivided 1/16th non-participating royalty interest in oil and gas from a tract comprising 192 acres of the Hanson lands, including the 32-acre tract in question.

[2]Case No. 1460, Chancery Court of Columbia County, Arkansas, Second Division.

the surface of the 32 acres and by a mineral deed of even date an undivided ⅝ths interest in all of the oil and gas thereunder. Subsequently, Ann Lewis Rives acquired the surface ownership and an undivided one-half of the ⅝ths of the mineral ownership.

In 1944, R. S. Foster acquired a tax deed to the 32 acres[3] and several conveyances followed; in 1949 the heirs of Thomas Hanson, Sr., other than Indiana Hanson Russ, conveyed to Mr. Foster a one-half mineral interest under the 32-acre tract as well as other Hanson lands and the original defendants (appellants) are the sole heirs of R.S. Foster. Amoco's claim is based on leases from both branches of the Hanson family and other parties to the suit claim fractional interests in the minerals from various sources.

In the suit below, plaintiffs claimed that their title was good as deraigned from Indiana Hanson Russ, her title having been acquired by reason of the family settlement. The defendants, on the other hand, claim that the heirs of Thomas Hanson, Sr., continued to own undivided interests in common in the minerals under all of the Hanson lands, the family settlement having had the effect of dividing only the surface lands and not title to the minerals. In short, appellants contend that the doctrine of *Johnson* v. *Ford,* 233 Ark. 504, 345 S.W. 2d 604 (1961) applies.

The issue, therefore, presented by this multisided suit is whether the family settlement in 1940 and the chancery decree, vested title in fee simple in the heirs of Thomas Hanson, Sr., to the tracts each separately received, or, only title to the surface. If in fee simple, then the plaintiffs are entitled to have their title quieted.

The case was submitted to the Chancellor largely on the stipulation and documentary evidence, following which the Chancellor granted the plaintiffs' suit to quiet title to the

---

[3]The Clerk's Deed of Tax Sale described the lands as:
    32 A N.E. ¼ N.E. ¼
    Section 33, Township
    19 South, Range 19 West
which the chancellor held to be void for want of a good description.

mineral interests claimed, holding that *Johnson* v. *Ford, supra,* did not apply and relying on those decisions favoring family settlements. The defendants appealed, assigning as error that the Chancellor should have applied the ruling in *Johnson* v. *Ford, supra.*

We think the Chancellor was correct and we concur in his construction of the *Johnson* v. *Ford* holding. A number of reasons for distinguishing *Johnson* v. *Ford* from the present case are apparent. For one thing, in *Johnson,* a voluntary partition occurred, whereas here, the division of the lands was by reason of a family settlement. Family settlements are looked on with favor by the Arkansas Supreme Court. *Tate* v. *Johnson,* 15 Ark. 275 (1854); *Pfaff, Administratrix* v. *Clements,* 213 Ark. 852, 213 S.W. 2d 356 (1948). In *Pfaff, supra,* Justice McFadden, speaking for the Court, stated:

> . . . it is not essential that the strict mutuality of obligation or the strict legal sufficiency of consideration — as required in ordinary contracts — be present in family settlements. It is sufficient that the members of the family want to settle the estate; one person may surrender property and receive no *quid pro quo.*

Moreover, it is reasonable to conclude that the parties to the family settlement in the case at bar had the intention of fully settling the estate. Unless another rule of property applies which would lead to a contrary result, we believe that this rule is the controlling factor.

Appellants insist that the rule in *Johnson* v. *Ford, supra* and *Hutchinson* v. *Sheppard,* 225 Ark. 14, 279 S.W. 2d 33 (1955) applies. In *Johnson,* one of the heirs of A.H. Hadley conveyed his undivided one-third interest to a 38-acre tract of land to Willie Johnson in fee simple. The other two Hadley heirs conveyed their undivided two-thirds interest to Ernest Ford, but retained 5/12ths interest in the minerals. The two purchasers voluntarily partitioned the 38-acre tract by an exchange of warranty deeds. Later, C.G. Johnson purchased the interest of Willie Johnson and brought suit for a reformation of the partition deed, asserting that the parties had intended only to divide the surface interests and by mistake had divided the

mineral interest. The chancellor dismissed the complaint, but on appeal, the Arkansas Supreme Court reversed the ruling of the chancellor. The court reiterated its ruling in *Hutchinson* v. *Sheppard, supra* — that "where the parties to a partition deed own two estates in the land, one in common and in the same ratio as the division and the other not in common and therefore not in that ratio, the deed should be construed as a conveyance only of the estate held in common." Hence, since there was a 5/12ths mineral interest oustanding in the name of the Hadley heirs, then the court held that this rule was applicable.

Consequently, we would be compelled to apply the rule in *Johnson* except that distinguishing factors are present in the instant case. As the chancellor stated in his opinion, had this agreement been the result of merely a partitioning deed, we would be compelled to accept the rule of *Johnson*. However, this division of property came about as the result of a family settlement. As was stated earlier, family settlements have been strongly favored and liberally construed by the Arkansas Supreme Court. There is no limitation in the family settlement which would lead us to the conclusion that only the surface rights were divided.

Additionally, the plaintiffs in this case and Amoco Production Company were bona-fide purchasers without notice of the claims of the appellants. This factor was not present in the *Johnson* case as the court properly recognized:

> In this case we are not called upon to decide to what extent a bona fide purchaser might be bound by the rule in question . . . Here no one claiming to hold under Ernest Ford has met the burden of proving himself to be an innocent purchaser; so that issue does not raise.

Moreover, as the chancellor observed, *Johnson* departs from a long standing and recognized rule of property that a deed accurately describing the lands and without reservation, includes the minerals as well as the surface. *Long Prairie Levee District* v. *Wall*, 227 Ark. 305, 298 S.W. 2d 52 (1957); *Osborn* v. *Arkansas Territory Oil and Gas Company*, 103 Ark. 175 (1912). While the rationale of *Johnson* is sound, we do not believe it

should be broadened beyond the immediate circumstances to which it was held applicable, that is, before innocent parties have entered the picture.

In concluding that the Hanson heirs contemplated that the mineral interests were divided by the oral division of the surface lands, the court below noted that the 1950 decree recited that the effect of the division was to quiet title of each heir *as against all claims* of the other heirs, language which would obviously be inappropriate if the heirs continued to own individual mineral interests under lands belonging to another. Also, the suit to interpret the effect of the 1919 contract to Owen and Ware (See footnote 1) was undertaken by Jessie H. Hanson alone, whereas the other heirs presumably would have joined in that litigation if it was understood that the minerals were still held in common. Too, Indiana Hanson Russ would have owned only an undivided one-sixth in the minerals if the minerals continued to be held in common, whereas, she undertook to convey larger interests after the family settlement to include the minerals, nor did the other Hanson heirs attempt to exercise dominion or control over the mineral interests in the tract of Indiana Hanson Russ at any time after the decree in 1950. Finally, the provision in the family settlement giving Lucy Hanson a life estate with the right to exercise oil and gas leases and receive the royalty benefits without the other heirs joining in such instruments is seen as a further expression of the intention that all rights and interests in the Hanson estate were divided by the settlement. Perhaps most significant to all is that in *Johnson* v. *Ford* the effort to reform the partition deed was undertaken within a relatively short time, and before innocent purchasers became involved, whereas here, many years elapsed and numerous conveyances occurred, before any effort was made to apply the premise of *Johnson* v. *Ford.* To apply the *Johnson* rule to the case before us would be a clear injustice.

The decree of the chancellor is, accordingly, affirmed.