M. Sam JONES, Jr. and Richard J. BROUSSARD
*v.* FRANKS PETROLEUM, INC.

80-291                                    617 S.W. 2d 369

Supreme Court of Arkansas
Opinion delivered June 22, 1981

*Keith, Clegg & Eckert,* for appellants.

*Richard L. Choate,* for appellee.

GEORGE ROSE SMITH, Justice. In 1975 the appellee Franks Petroleum, Inc., was the operator of two producing oil wells on 200 acres of land in Columbia county. The 200 acres had been owned by Peter Doss at his death in 1932, but thereafter the ownership of the minerals within the tracts became scattered among almost a hundred persons, some owning as little as an undivided 1/7200th interest. Franks Petroleum, in order to determine with precision the various mineral ownerships, filed a bill of interpleader bringing the various owners into court. In 1976 the court approved what was apparently a consent decree, which enumerated the descendants of Peter Doss, recited the stipulated effect of

several conveyances, and quieted the title of the various mineral owners, setting out in detail their fractional interests. We regard that decree as decisive of practically all the issues in the present case and will refer to it as we state the facts.

The decree listed the two appellants, Jones and Broussard, as owners of a fractional mineral interest, but a dispute arose between them and Franks Petroleum about whether the Jones-Broussard interest was included in the oil and gas leases held by Franks Petroleum, as it contends, or was wholly unleased, as Jones and Broussard contend. To settle that dispute Jones and Broussard brought this suit against Franks Petroleum to obtain an accounting for their share of the production from the two oil wells. The chancellor found that the plaintiffs' mineral interest was included in the Franks Petroleum leases and quieted its title to its oil and gas leasehold estate as against Jones and Broussard. They have appealed to this court under Rule 29 (1) (n). The issues are wholly of law, all the facts being stipulated.

After Peter Doss's death his nine children (or their descendants) sought to partition the 200 acres by filing a plat. The consent decree, however, held that the partition was ineffective and that what had been assigned to one of the children as Lot 7, a 22-acre tract, in fact continued as an undivided one-ninth interest in the 200 acres. Before the consent decree, however, conveyances referred to Lot 7, which was described by metes and bounds and contained 22 acres, more or less.

In 1964 the Mangrums, who were the Doss great-grandchildren owning Lot 7, conveyed it by warranty deed to J. F. and Wanda Baker, describing the tract as 22 acres, reserving a ¾ mineral interest (16.5 mineral acres), and "conveying a full 5.5 [mineral] acres" to the grantees. The consent decree recited that the Mangrum-Baker deed effectually reserved an undivided three fourths of the grantors' mineral interest in the 200 acres and effectually conveyed an undivided one fourth to the Bakers.

In 1968 the Bakers conveyed the 22 acres to Lamar

McEachern, with this reservation: "The grantors except all the oil, gas and other minerals as such have been reserved by former grantors." The exception was ambiguous, because the word "as" can mean either "in the same manner that" or "because." Webster's Second New International Dictionary (1939). If "as" had the first meaning, the grantors excepted only the Mangrums' reserved three fourths of the minerals, the remaining one fourth passing to McEachern. But if "as" meant "because," the grantors excepted all the minerals, the final clause being merely explanatory. The second interpretation is obviously doubtful, since former grantors had *not* reserved *all* the minerals, only three fourths.

The ambiguity, however, was laid to rest by the consent decree, which recited that by stipulation of the parties it was the intent of the grantors and grantee to refer to the entire 200 acres, and that also by stipulation of the parties the deed effectually conveyed to McEachern all mineral interest acquired by the Bakers from the Mangrums. Hence after that 1968 conveyance McEachern owned 5.5 mineral acres in the 200 acres. In 1970 and 1972 Franks Petroleum obtained oil and gas leases from the Mangrums, who had retained three fourths of the mineral interest, and from the Bakers, who (according to the 1976 consent decree) had already conveyed their mineral interest to McEachern. Franks Petroleum has never obtained an oil and gas lease from McEachern nor from the appellants, who acquired McEachern's mineral interest in 1973.

As we have indicated, the consent decree practically settles this case, because Franks Petroleum was a party (the plaintiff) in the interpleader suit and is bound by the decree. Indeed, the company does not controvert any of the facts as we have stated them. It argues instead that the Mangrums' deed to the Bakers in 1964 should be construed to convey only a one-fourth mineral interest in the Mangrums' one-ninth interest in 22 acres, which would be a one thirty-sixth interest in only 22 acres. That deed, however, said nothing whatever about a one-ninth interest. Lot 7 was then considered to be all that the Mangrums still owned, but the consent decree nullified the attempted partition and converted the intervening conveyances of Lot 7 into convey-

ances of a one-ninth interest in the 200 acres. The consent decree is unmistakably clear on that point.

We should mention one other circumstance on which the chancellor relied in reaching his conclusion. In the interpleader suit the Bakers contended that their deed to McEachern was ambiguous and should be interpreted in their favor. Jones and Broussard disputed that contention. Two days before the signing of the consent decree that dispute was settled by the execution of a royalty deed from Jones and Broussard to the Bakers' daughter, Evelyn Sluss, in return for which the Bakers gave up their claim. That deed, however, conveyed only a non-participating one-eighth royalty interest to Mrs. Sluss, not the grantors' eight-eighths mineral interest. The chancellor's view would mean that Jones and Broussard compromised the dispute by giving up their entire interest, even though the royalty deed explicitly described only a one-eighth interest. The royalty deed could not have subjected the grantors' entire interest to the existing leases to Franks Petroleum, because Jones and Broussard never joined in such a lease.

Reversed and remanded.

Adkisson, C.J., and Hays, J., dissent.

Steele Hays, Justice, dissenting. I do not understand where the chancellor erred. The evidence in this case was submitted to the trial court by stipulation, but even so we are to view that evidence in the light most favorable to the appellee. And we are to resolve all reasonable inferences derived from such evidence in favor of the appellee, affirming the trial court even where he mistakenly applies the law, if the result is correct.

This is an unusual case. The facts were fully stipulated and the issues of law, if there are any, are not identified anywhere — either in the appellants' brief, who cite nothing throughout their brief on the only significant point raised on appeal; or in the appellee's brief; or even in the majority opinion. If the chancellor is to be reversed the error ought to be pointed out. I find no error, simply a difference of

opinion as to the inferences to be drawn from the evidence. In the premises of this case I think the trial judge is in a better position to reach the right result.

Peter Doss died intestate many years ago owning 200 acres in Columbia County, including all the mineral interests except a small interest not here involved. His nine heirs attempted a partition by means of a plat dividing the land into nine parts. One 22 acre tract, No. 7, was allotted or descended to Mamie [Doss] Mangrum and is the subject of this suit. In 1964, her heirs, Robert Mangrum and Maudell Mangrum Edwards deeded 22 acres, Lot 7, by a metes and bounds description to J. F. Baker and Wanda Baker, reserving to the grantors ¾ths of the minerals and conveying ¼th, or 5.5 mineral acres, to the grantees. In 1968 the Bakers deeded the same 22 acres to Lamar McEachern, with this reservation:

> The grantors except all the oil, gas and other minerals as such have been reserved by former grantors.

By mesne transactions, Franks Petroleum acquired mineral leases covering the entire 200 acres — from the Mangrum heirs in 1970 and from the Bakers in 1972.

In 1973 Lamar McEachern deeded the 22 acres to appellants. The deed contained a reservation excepting from the grant all oil, gas and other minerals "heretofore constructively severed from the above described land."

In 1975 Franks Petroleum brought in two producing wells on the 200 acres and filed an interpleader suit to determine the ownership of more than $109,000.00 in oil royalties, naming some 70 heirs of Peter Doss and approximately 100 presumed distributees. The lengthy and complex decree, which undisputably was entered by consent contained two recitations on which the appellants have constructed their claim of entitlement to ⅞ths of the mineral interest attributable to 5.5 acres and claims to other mineral and royalty interests in the 200 acres. The decree recites that "by stipulation between the parties" the Baker to McEachern deed effectually conveyed ¼th mineral interest

to McEachern to the entire 200 acres and, more, that the deed from McEachern to the appellants "effectually conveyed all mineral interest in and to the 200 acres" acquired by McEachern from the Bakers. Thus, on these stipulations, appellants contend that when Franks Petroleum acquired the mineral leases from the Mangrums in 1970 and from the Bakers in 1972 (some 5 or 6 years before the decree) they, the appellants, had an outstanding mineral interest for which Franks Petroleum should now pay them. But this argument, if it has no other flaws, is dependent on giving *retroactive effect* to stipulations of a consent decree which could not possibly have been intended by such stipulations. At least there is nothing in this record to indicate either that the court was actually making those findings or that the parties were actually intending to agree to those findings as a matter of compromise. It may be that they did, but the court found otherwise and I believe that it was in a far better position than we are to construe what occurred from this very abbreviated record. In my view what appellants ask us to hold was neither intended by the stipulation in the inter-pleader suit nor was it the result of a judicial determination by the trial judge. In the absence of proof one way or the other I believe the better course is to rely on the holding of the chancellor.

The majority point out that the chancellor's view would mean that appellants compromised their dispute with the Bakers over the reservation in the Baker-McEachern deed by giving up their entire interest, which I concede to be improbable. But there are two answers: First, whether appellants gained other benefits by the compromise can't be determined from this record, but I strongly suspect that they did. Secondly, even if they did not, one can speculate that they were willing to give up very little (a ⅛th royalty interest to which they had a very dubious claim) in the expectation that by so doing they gained a good chance of acquiring ⅞ths mineral interest to 5.5 acres, by claiming that they acquired their interest from McEachern *unleased,* and which the outcome of this appeal now validates. Hence, they bargained very little for very much, and won.

I would affirm the chancellor or, at least, remand the

case with directions to grant the appellants' motion for the submission of evidence on the issues "not completely developed in evidence or by the [chancellor's] letter opinion." In this fashion the case could be resolved, not on guesswork, but on relevant evidence. Where the issues have not been fully developed below, even due to common inadvertence of the parties, it is our practice in equity cases to remand for further proof. *Hutchison* v. *Sheppard*, 225 Ark. 14, 279 S.W. 2d 33 (1955).

ADKISSON, C.J., joins in this dissenting opinion.