Emily Kitchens KOLB *v.* Isaac MORGAN, et al.

92-1344                                                      854 S.W.2d 719

Supreme Court of Arkansas
Opinion delivered May 24, 1993

*Keith, Clegg & Eckert* and *Paul C. Crumpler*, for appellants.

*Henry C. Kinslow*, *William J. Wynne*; and *Arnold, Hamilton & Streetman*, by: *James H. Hamilton*, for appellees.

ROBERT H. DUDLEY, Justice. This appeal involves conflicting claims to the ownership of mineral interests. The facts necessary to understand the dispute are as follows. Ike Broomfield died intestate owning a tract of land in fee simple. He was survived by eight children, one of whom was an incompetent. After his death, each of his children owned an undivided one-eighth interest in the tract as a tenant in common. Subsequently, one of the children conveyed a 1/20 mineral interest to a third party. All parties agree that this deed conveying the mineral interest operated as a constructive severance of the minerals from the surface and created two titles, one to the surface and one to the

minerals. *See Schnitt* v. *McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968). At that time, the children each owned two estates, one to the surface and the other to the minerals, but the two estates were owned in different ratios. The title to the surface remained in undivided one-eighth interests in common, while the title to the minerals had a different ratio. On January 3, 1952, one of the seven competent children was appointed guardian of the estate of the one incompetent child, who was then in the State Hospital in Benton, and the next day, the seven competent children, including the guardian, filed suit to partition the tract. The guardian. was named as the defendant. The petition for partition did not mention the mineral interests. The seven competent children were represented by one attorney. The chancellor appointed three attorneys as commissioners to view the land and determine whether it could be divided in kind. Three days later, the commissioners reported to the court that the land could be divided in kind and gave the court the legal descriptions of the proposed division in kind. Four months later, the chancellor ordered the land partitioned in kind on the basis of the recommendation of the commissioners. The decree of partition does not mention the mineral interests; it neither includes nor excludes the mineral interests. All eight of the children are now deceased, and their successors in interest, which include both the appellants and appellees, executed oil and gas leases. A well has been drilled and completed on the land, crude oil has been sold, and the proceeds are being held subject to division. This interpleader action was filed in chancery court, with the proceeds from the crude oil production being held subject to a determination by the chancellor of the right to the proceeds.

All of the parties agree that partition, whether involuntarily through court action or voluntarily by partition deed, merely severs the unity of possession. *See Johnson* v. *Ford*, 233 Ark. 504, 345 S.W.2d 604 (1961). None of the parties lose anything by the partition action except the right to hold the property in common, nor gain anything except to hold the interest claimed by him in severalty. *Id.* at 505, 345 S.W.2d at 605. However, in this case the parties to the partition suit owned two different estates. In *Hutchinson* v. *Sheppard*, 225 Ark. 14, 279 S.W.2d 33 (1955), we held that when the parties to a partition deed own two estates in land, one in common and in the same ratio

as the division, and the other not in common and therefore not in that ratio, the deed should be construed as a conveyance only of the estate held in common. The rule prevents either party from gaining an advantage at the other's expense. We affirmed that holding in *Johnson* v. *Ford.* The same reasoning would be applicable to a partition suit such as the one at bar. Here, the eight children owned two estates in the tract, one estate, the surface estate, was in common and in the same ratio as the division by the decree, and the other estate, the mineral interest, was not in the same ratio. Thus, under the doctrine of *Hutchinson* v. *Sheppard,* the partition decree would not have included the mineral interests.

However, in *Bradley* v. *Teague,* 266 Ark. 1013, 589 S.W.2d 200 (Ark. App. 1979), the court of appeals distinguished a family settlement agreement. In that case, the husband and wife owned the fee estate and conveyed away a fractional royalty interest in the minerals. After the husband's death, the widow and children of the decedent orally entered into a family settlement agreement, and each took possession of his or her land and began to make improvements on his or her tract. Nine years after the oral agreement had been reached, a partition deed was drafted and all but one, named Indiana, signed. The widow and all of the children who signed the partition deed filed suit against Indiana, and the trial court confirmed the division pursuant to the family settlement agreement and quieted title of all the parties as against the claims of the others. Later, and apparently after the death of the widow, all of the children or their heirs, except for Indiana, conveyed a 1/2 interest in the mineral estate underlying Indiana's tract to a third party. Five years later, Indiana conveyed her surface estate and part of the mineral estate to a different third party. At a trial involving ownership of the mineral estate, the issue was whether the family settlement and subsequent decree vested title in fee simple in each of the children to the tract each separately received, or vested only title to the surface estate. The trial court found that the third party who purchased from Indiana should prevail. The court of appeals affirmed primarily because the family intended to settle the entire family estate and not just a part of it. The court of appeals additionally considered other factors, which are set out in the opinion, in reaching its result. The distinction is sensible and just. In a family settlement agreement,

one person might surrender his interest in the property and ask nothing in return, and the family members who reach such a settlement would likely intend to reach an agreement to settle all of the estates, whether severed or not.

The chancellor held that this interpleader suit was governed by the law set out in *Johnson v. Ford*, 233 Ark. 504, 345 S.W.2d 604 (1961), and *Hutchinson v. Sheppard*, 225 Ark. 14, 279 S.W.2d 33 (1955), and, therefore, the partition decree did not include the mineral interests. As a result, appellees are entitled to the funds. We affirm the ruling of the chancellor.

Appellants argued below, and now argue on appeal, that while a partition action was filed, it should be treated as a family settlement agreement because there was, in fact, a family settlement, and the partition action was the only way the agreement could be effectuated since one of the eight children was incompetent. They contend this is proven circumstantially by the evidence that seven of the children went to the same attorney and employed him to file the action, that three attorneys were appointed commissioners, that they reported back in three days, and that the decree of partition refers to "all the right, title, equity, interest, and estate of the parties hereto, either at law or in equity, in and to the following lands."

We cannot hold that the finding of the chancellor was clearly erroneous. There was no direct evidence of a family settlement agreement. There is nothing in the record to support appellant's assertion that the appointment of attorneys as commissioners demonstrates that there was a family agreement.

Appellants argue that it is "common knowledge" that in many partition suits the family agrees to a division in kind, the commissioners only replicate that agreement, and then the family members draw numbers to see which co-tenant gets which tract. However, there was no evidence of such a practice, and such an alleged practice is not entitled to judicial notice. *See* A.R.E. Rule 201 (b). In fact, and to the contrary, the petition for partition stated that the tract was "susceptible of division into eight equal parts," but "if it be found that such partition cannot be had . . . that said lands be sold and that the proceeds of such sale be divided." Finally, there was no proof to show that there was a family agreement merely because the commissioners reported

back in three days. The chancellor labeled such proof as only "speculation" that there was a family settlement agreement, and we cannot hold that finding was clearly erroneous.

The chancellor wrote that if there had been a family settlement agreement, it would not have been necessary to file the suit in partition since it could have been effected by a partition deed signed by all of the competent heirs and by the guardian with the approval of the probate court. Appellants attack this finding by contending that under the then existing statutes it was very clear that a partition suit against an incompetent was specifically authorized, while it was not nearly so clear that it could be done with approval of the probate court. While the then applicable statute, Ark. Stat. Ann. § 57-639, was subsequently amended to make it absolutely clear that the guardian of an incompetent person can participate in the partition of property, the probate court could have approved a partition deed under the statute in effect at the time the petition for partition was filed.

The chancellor also found that the incompetent was obviously not able to enter into a valid family settlement contract. Appellants argue that it does not matter that the incompetent could not have entered into a valid contract because the family agreement would still be binding on the competent members of the family. *See Pfaff* v. *Clements*, 213 Ark. 852, 213 S.W.2d 356 (1948). Even though the competent members might enter into an agreement among themselves, the fact of incompetency of one member of the family was a valid factor for the chancellor to consider in determining whether the appellants had met their burden in proving a family settlement agreement. In sum, there was no direct evidence of a family settlement agreement. The chancellor found that the circumstantial evidence of a family settlement agreement was too speculative to amount to substantial evidence, and we cannot hold that finding clearly erroneous.

Appellants next argue that the chancellor erred in failing to find that all of the family or their privies confirmed the agreement. We summarily dismiss the argument. We have affirmed the finding that there was no family settlement agreement. Since there was no family settlement agreement, there was no agreement to be confirmed by the family. Further, the facts support the chancellor's finding that there was no proof of a

confirmation of an agreement.

In their next argument, appellants contend that the chancellor erred in refusing to consider the fact that none of the original family members objected to the family settlement agreement for more than forty years. We have no way of knowing whether the chancellor considered this fact or not, but, again, we summarily hold that since there was no family settlement agreement, there was no need to object to it.

■ The final issue involves the award of attorney fees to the attorneys who filed this interpleader suit. Clearly, our rule is that an attorney who files an interpleader action is not entitled to fees. *Construction Mach. of Arkansas* v. *Roberts*, 307 Ark. 252, 819 S.W.2d 268 (1991); *Birdsong Cabinet Shop, Inc.* v. *Bland*, 307 Ark. 149, 817 S.W.2d 886 (1991); *Saunders* v. *Kleier*, 296 Ark. 25, 751 S.W.2d 343 (1988). However, this issue was not brought to the attention of the chancellor, and we will not consider it for the first time on appeal. Our holding comes about in the following manner. The complaint of interpleader, in paragraph 20, asked for reasonable attorneys' fees. Four of the separate answers responded that the defendants "deny the material allegations of paragraph 20 of the complaint for interpleader," and one answer provided that "any costs and attorney fees paid the plaintiff/ interpleader in this matter should first come from Herbert E. Russell's interest in this estate." In short, the defendants simply denied the material allegation. Appellants' abstract does not reflect that they ever apprised the chancellor that the award of attorney fees was improper under the law.

■ A denial of a material allegation is generally thought to be a denial of material factual allegation, *see* ARCP Rule 8(b), while avoidance of a claim because of operation of law is generally thought to require the filing of an affirmative defense, *see* ARCP Rule 8(c). The chancellor apparently considered this issue in those terms, since his ruling was unusually specific about the exact amount of costs to be reimbursed and the amount of attorneys' fees to be awarded. The chancellor specified that the attorneys were to be reimbursed $64.74 for the filing fee, $209.10 for the publication fee, $344.76 for the cost of certified mail and were awarded $16,788.79 as attorneys' fees. The appellants never apprised the chancellor that this was anything other than a

dispute over the factual amounts of the costs and fee. The applicable case law was never mentioned, either in a pleading or in oral argument. Under these facts, it appears that the appellants are raising the issue for the first time. As we have said many times, most recently in *Burns* v. *Burns*, 312 Ark. 61, 66, 847 S.W.2d 23, 27 (1993). "The argument may have merit, but it is not one that we reach because the chancellor was not apprised of the issue, and we do not consider issues raised for the first time on appeal."

Affirmed.